CYNTHIA L. MELLEMA (State Bar No. 122798)
JEFFRY BUTLER (State Bar No. 180936)
MICHELLE BRADLEY (State Bar No. 221323)
SONNENSCHEIN NATH & ROSENTHAL LLP
2121 N. California Blvd., Suite 800
Walnut Creek, California 94596
Telephone: (925) 949-2600
Facsimile: (925) 949-2610

Attorneys for Defendant
ALLSTATE INSURANCE COMPANY

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| STEPHEN M. HOHS,<br><br>      Plaintiff,<br><br>vs.<br><br>ALLSTATE INSURANCE COMPANY<br>and DOES 1 through 100, inclusive,<br><br>      Defendants. | No.<br><br>**NOTICE OF REMOVAL OF A CIVIL ACTION** |

TO THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE

NORTHERN DISTRICT OF CALIFORNIA AND TO PLAINTIFF AND HIS ATTORNEYS

OF RECORD:

PLEASE TAKE NOTICE that pursuant to 28 U.S.C. section 1441(a), defendant Allstate

Insurance Company hereby removes to this Court the action described herein and respectfully

submits the following statement of grounds for removal:

THE SUPERIOR COURT ACTION

1.    On March 11, 2008, plaintiff Stephen Hohs filed an action in the Superior Court of

the State of California for the County of Santa Clara entitled "*Hohs v. Allstate Insurance*

SONNENSCHEIN NATH & ROSENTHAL LLP
2121 N. California Blvd., Suite 800
Walnut Creek, California 94596
(925) 949-2600

1    *Company, et al.*," Case No. 108CV107836 (the "Superior Court Action").

2        2.    In the Superior Court Action, plaintiff seeks damages with respect to Allstate's

3    handling of a third-party liability lawsuit against plaintiff (the "Underlying Action").

4    Specifically, plaintiff contends that Allstate failed to provide a timely legal defense, failed to

5    initially provide local legal representation, and settled the Underlying Action for $150,000,

6    despite its promise not to settle for more than "a couple of thousand dollars." (Complaint

7    ("Compl."), ¶¶ 22, 26, 32, 36.) Plaintiff asserts causes of action against Allstate for "breach of

8    written contract, breach of oral contract, bad faith, general negligence, and fraud."

9                                  SERVICE

10       3.    Plaintiff served the Summons and Complaint in the Superior Court Action on

11   Allstate on or about April 2, 2008. Attached as Exhibit A to this notice are true and correct

12   copies of the Summons, Complaint, Allstate's Answer (which Allstate filed in the Superior

13   Court on April 25, 2008), and ADR papers, which Allstate believes constitute all pleadings on

14   file in the Superior Court Action.

15                         DIVERSITY OF CITIZENSHIP

16       4.    Plaintiff was, at the time of filing of the Superior Court Action, now is, and at all

17   relevant times has been, a citizen and resident of the State of California. (Compl. ¶ 1.)

18   Defendant Allstate was, at the time of filing of the Superior Court Action, now is, and at all

19   relevant times has been, a corporation organized and existing under the laws of the State of

20   Illinois, with its principal places of business in the city of Northbrook, Illinois.

21       5.    Plaintiff and Allstate, accordingly, are citizens and residents of different states.

22       6.    "Doe" defendants must be disregarded in determining diversity of citizenship. 28

23   U.S.C. § 1441(a) ("For purposes of removal under this chapter, the citizenship of defendants

24   sued under fictitious names shall be disregarded.").

25                          AMOUNT IN CONTROVERSY

26       7.    Specifically acknowledging the Superior Court Action is removable, plaintiff

27   alleges that, "while the amount sought in damages is unspecified, the amount in controversy will

28   exceed $75,000." (Compl. ¶ 46.)

SONNENSCHEIN NATH & ROSENTHAL LLP
2121 N. California Blvd., Suite 800
Walnut Creek, California 94596
(925) 949-2600

1    8.    The Superior Court Action is a civil action of which this Court has original

2    jurisdiction under 28 U.S.C. section 1332, in that plaintiff and Allstate are citizens of different

3    states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

4    9.    The case is therefore one that Allstate may remove to this Court pursuant to 28

5    U.S.C. sections 1441 and 1446.  The removal is effected less than thirty days after service of the

6    Complaint in the Superior Court Action, in accordance with 28 U.S.C. section 1446(b).

7

8    Dated: April 25 2008                    SONNENSCHEIN NATH & ROSENTHAL LLP

9

10

11                                    By _Michelle A. Bradley_

12                                        MICHELLE BRADLEY

13                                    Attorneys for Defendant
                                      ALLSTATE INSURANCE COMPANY

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SONNENSCHEIN NATH & ROSENTHAL LLP
2121 N. California Blvd., Suite 800
Walnut Creek, California 94596
(925) 949-2600

Case No. _____        -3-        NOTICE OF REMOVAL

**EXHIBIT A**

# SUMMONS
## (CITACION JUDICIAL)

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
ALLSTATE INSURANCE COMPANY

DOES 1 THROUGH 100, INCLUSIVE

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
STEPHEN M. HOHS

*FOR COURT USE ONLY*
*(SOLO PARA USO DE LA CORTE)*

[ENDORSED]
FILED

MAR 11 08

KIRI TORRE
HIEF EXEC. OFFICER/CLERK
SUPERIOR COURT OF CA
COUNTY OF SANTA CLARA
J. _____ DEPUTY

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association.

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.courtinfo.ca.gov/selfhelp/español), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.courtinfo.ca.gov/selfhelp/español) o poniéndose en contacto con la corte o el colegio de abogados locales.*

The name and address of the court is:
*(El nombre y dirección de la corte es):*

CASE NUMBER (Número del Caso): **108 CV 107836**

SANTA CLARA COUNTY SUPERIOR COURT
191 N. FIRST STREET
SAN JOSE, CA 95113

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
STEPHEN M. HOHS

61 CHERRY CREST LANE, SAN JOSE, CA 95136-3618 (408) 225-4353      J. Cao-Nguyen

DATE: **MAR 11 2008**    Kiri Torre Chief Executive Officer/Clerk, by _____, Deputy
*(Fecha)*    Clerk, *(Secretario)*    *(Adjunto)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served
1. [ ] as an individual defendant.
2. [ ] as the person sued under the fictitious name of *(specify):*
3. [X] on behalf of *(specify):* Allstate Insurance Company
   under: [X] CCP 416.10 (corporation)    [ ] CCP 416.60 (minor)
   [ ] CCP 416.20 (defunct corporation)    [ ] CCP 416.70 (conservatee)
   [ ] CCP 416.40 (association or partnership)    [ ] CCP 416.90 (authorized person)
   [ ] other *(specify):*
4. [ ] by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. January 1, 2004]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
American LegalNet, Inc. www.USCourtForms.com

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF SANTA CLARA
## ALTERNATIVE DISPUTE RESOLUTION
### INFORMATION SHEET / CIVIL DIVISION

Many cases can be resolved to the satisfaction of all parties without the necessity of traditional litigation, which can be expensive, time consuming, and stressful. The Court finds that it is in the best interests of the parties that they participate in alternatives to traditional litigation, including arbitration, mediation, neutral evaluation, special masters and referees, and settlement conferences. Therefore, all matters shall be referred to an appropriate form of Alternative Dispute Resolution (ADR) before they are set for trial, unless there is good cause to dispense with the ADR requirement.

### What is ADR?

ADR is the general term for a wide variety of dispute resolution processes that are alternatives to litigation. Types of ADR processes include mediation, arbitration, neutral evaluation, special masters and referees, and settlement conferences, among others forms.

### What are the advantages of choosing ADR instead of litigation?

ADR can have a number of advantages over litigation:

<   ADR can save time.  A dispute can be resolved in a matter of months, or even weeks, while litigation can take years.

<   ADR can save money.  Attorney's fees, court costs, and expert fees can be reduced or avoided altogether.

<   ADR provides more participation.  Parties have more opportunities with ADR to express their interests and concerns, instead of focusing exclusively on legal rights.

<   ADR provides more control and flexibility.  Parties can choose the ADR process that is most likely to bring a satisfactory resolution to their dispute.

<   ADR can reduce stress.  ADR encourages cooperation and communication, while discouraging the adversarial atmosphere of litigation.  Surveys of parties who have participated in an ADR process have found much greater satisfaction than with parties who have gone through litigation.

### What are the main forms of ADR offered by the Court?

<   Mediation is an informal, confidential process in which a neutral party (the mediator) assists the parties in understanding their own interests, the interests of the other parties, and the practical and legal realities they all face. The mediator then helps the parties to explore options and arrive at a mutually acceptable resolution of the dispute. The mediator does not decide the dispute. The parties do.

<   Mediation may be appropriate when:
   <   The parties want a non-adversary procedure
   <   The parties have a continuing business or personal relationship
   <   Communication problems are interfering with a resolution
   <   There is an emotional element involved
   <   The parties are interested in an injunction, consent decree, or other form of equitable relief

*-over-*

CV-5003 REV 5/06

# CIVIL LAWSUIT NOTICE

**Superior Court of California, County of Santa Clara**
**191 N. First St., San Jose, CA 95113**

CASE NUMBER: **108CV107836**    ATTACHMENT CV-5012

### READ THIS ENTIRE FORM

*PLAINTIFFS* (the person(s) suing): Within 60 days after filing the lawsuit, you must serve each defendant with the *Complaint, Summons*, an *Alternative Dispute Resolution (ADR) Information Sheet*, and a copy of this *Civil Lawsuit Notice*, and you must file written proof of such service.

---

*DEFENDANTS* (The person(s) being sued): You must do each of the following to protect your rights:

1. You must file a written response to the *Complaint*, in the Clerk's Office of the Court, within 30 days of the date the *Summons* and *Complaint* were served on you;
2. You must send a copy of your written response to the plaintiff; and
3. You must attend the first Case Management Conference.

Warning: If you do not do these three things, you may automatically lose this case.

---

*RULES AND FORMS:* You must follow the California Rules of Court (CRC) and the Santa Clara County Superior Court Local Civil Rules and use proper forms. You can get legal information, view the rules and get forms, free of charge, from the Self-Service Center at 99 Notre Dame Avenue, San Jose (408-882-2900 x-2926), or from:

- State Rules and Judicial Council Forms: www.courtinfo.ca.gov/forms and www.courtinfo.ca.gov/rules
- Local Rules and Forms: http://www.sccsuperiorcourt.org/civil/rule1toc.htm
- Rose Printing: 408-293-8177 or becky@rose-printing.com (there is a charge for forms)

For other local legal information, visit the Court's Self-Service website www.scselfservice.org and select "Civil."

*CASE MANAGEMENT CONFERENCE (CMC):* You must meet with the other parties and discuss the case, in person or by telephone, at least 30 calendar days before the CMC. You must also fill out, file and serve a *Case Management Statement* (Judicial Council form CM-110) at least 15 calendar days before the CMC.

You or your attorney must appear at the CMC. You may ask to appear by telephone – see Local Civil Rule 8.

---

*Your Case Management Judge is:* **Kevin J Murphy**    Department: **22**

The 1st CMC is scheduled for: (Completed by Clerk of Court)

Date: **AUG – 5 2008**  Time: **3:00 PM**  in Department **22**

The next CMC is scheduled for: (Completed by party if the 1st CMC was continued or has passed)

Date: _____  Time: _____  in Department _____

---

*ALTERNATIVE DISPUTE RESOLUTION (ADR):* If all parties have appeared and filed a completed *ADR Stipulation Form* (local form CV-5008) at least 15 days before the CMC, the Court will cancel the CMC and mail notice of an ADR Status Conference. Visit the Court's website at www.sccsuperiorcourt.org/civil/ADR/ or call the ADR Administrator (408-882-2100 x-2530) for a list of ADR providers and their qualifications, services, and fees.

*WARNING:* Sanctions may be imposed if you do not follow the California Rules of Court or the Local Rules of Court.

---

**CIVIL LAWSUIT NOTICE**

1   Stephen M. Hohs
    61 Cherry Crest Lane
2   San Jose, CA 95136-3618

3   Telephone Number: (408) 225-4353

4   Plaintiff, In Pro Per

(ENDORSED)
FILED

MAR 11 08

KIRI TORRE
CHIEF EXEC. OFFICER/CLERK
SUPERIOR COURT OF CA
COUNTY OF SANTA CLARA
BY L-Cao-Nguyen DEPUTY

6       **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

7       **COUNTY OF SANTA CLARA**

8       **UNLIMITED CIVIL JURISDICTION**

10   STEPHEN M. HOHS             )   **CASE NO.1 0 8 C V 1 0 7 8 3 6**

11         Plaintiff,             )   **COMPLAINT**

12                       )   **1. BREACH OF WRITTEN CONTRACT**
                        )   **2. BREACH OF ORAL     CONTRACT**
13                     )   **3. BAD FAITH**
                        )   **4. GENERAL NEGLIGENCE**
14                     )   **5. FRAUD**

15                     )   **DEMAND FOR JURY TRIAL**

17         VS.               )

21   ALLSTATE INSURANCE COMPANY )
    and DOES 1 through 100, inclusive,   )
22

        Defendants,           )

27   Complaint                                                   Page 1
    Hohs V. Allstate Insurance Company and Does 1 through 100 Inclusive

1  Plaintiff alleges:

2

3                    **PRELIMINARY ALLEGATIONS**

4

5      1.  Plaintiff Stephen M. Hohs ("Hohs") is an individual who since 1988 resides at

6  61 Cherry Crest Lane, San Jose, California.

7

8      2. Plaintiff since January 2000 is an unpaid director on the board ("Board") of the Mansion

9  Park Homeowners Association. ("Association").  The Association is a non-profit California

10  corporation.

11

12      3. Defendant, Allstate Insurance Company ("Allstate") is an Illinois based corporation

13  whose principal place of business is Northbrook, Illinois and doing business in California.

14

15

16      4. Plaintiff is unaware of the true names and capacities, whether individuals, corporate

17  or otherwise, of Defendant DOES 1 through 100, and each of them are unknown to Plaintiff

18  who therefore sues said Defendants by such fictitious names.  Plaintiff will seek leave of the

19  Court to amend this Complaint and show their true names and capacities when the same has

20  been determined.

21

22

23      5. Allstate was the Association insurance carrier from approximately February  2002 to

24  February 2006. A copy of the policy is attached hereto as Exhibit 1.

25

26

27  Complaint                                                     Page 2
    Hohs V. Allstate Insurance Company and Does 1 through 100 Inclusive
28

1    6. Plaintiff was served on or about October 10, 2003 *Torres V. Hohs* Santa Clara County

2    Superior Court Case No. 1-03-CV-006504 ("lawsuit") which had six causes of action being

3    Invasion of Privacy, Defamation, Infliction of Emotional Distress, Breach of Fiduciary Duty,

4    Malicious Prosecution and Enforcement of CC&Rs.  A copy of the lawsuit is attached hereto

5    as Exhibit 2.

6

7    7. Plaintiff timely filed a claim with Allstate Insurance Company ("Allstate") upon being

8    served.  Allstate did not provide a timely response to the lawsuit forcing Plaintiff to be a *pro se*

9    litigant.

10

11    8. Plaintiff proceeded to file both an answer along with a cross-complaint on or about

12    November 4,2003.  A copy of the answer is attached hereto as Exhibit 3.  A copy of the cross-

13    complaint is  attached hereto as Exhibit 4. Allstate reimbursed Plaintiff the filing fees

14    on or about November 14, 2003. A copy of the reimbursement check is attached hereto as

15    Exhibit 5.

16

17    ·        9. Plaintiff as *pro se* filed a motion to strike based on the California anti-Slapp statute

18    California Code of Civil Procedure Section 425.16(a) on or about  December 5, 2003.  The

19    motion was denied  without prejudice on or about February 24, 2004.

20

21

22    10. Allstate did not  provide local legal representation but referred the matter to

23    Richard J. Edson, Esq. of Sacramento, CA ("Edson")  being approximately 200 miles away from

24    San Jose, CA. Edson was impressed with Hohs' Slapp motion and proposed Association of

25    Counsel with Hohs.

26

27    Complaint                                                        Page 3
      Hohs V. Allstate Insurance Company and Does 1 through 100 Inclusive

28

1    11. Plaintiff's motion for summary judgment is filed on or about April 14, 2004. Allstate

2    assigns Ms. Kramer ("Kramer") as the adjuster. Kramer informs Hohs prior to the July 20, 2004

3    motion for summary judgment hearing that Allstate decided to employ the local San Jose, CA

4    law firm Rankin, Landsness, Lahde, Serverian & Stock. Allstate insists Plaintiff to be

5    represented by counsel only as defendant and should proceed pro se as cross-complainant.

6    Rankin, Landsness, Lahde, Serverian & Stock would appoint David J. Stock, Esq. to be counsel

7    for Hohs as defendant only. Kramer is informed by Hohs that as a *pro se* litigant that significant

8    time along with expenses has been incurred. Kramer informs plaintiff that Allstate considered

9    the lawsuit totally without merit . Kramer informs Hohs that Allstate would never settle the

10   lawsuit  for more than a small token sum of a couple of thousand dollars.   Kramer informs

11   Plaintiff to continue his legal work as if Allstate intended to settle the lawsuit then it would not

12   be needed along with promising to reimburse Plaintiffs costs. The lawsuit goes through a failed

13   mediation on or about Oct. 19, 2004 with the Honorable Leonard J. Sprinkles.

14

15

16

17   12. The lawsuit is amended on March 9, 2005 to add the new Plaintiff, Elizabeth J.

18   Ruzendall ("Ruzendall") along with  new defendants Joachim Sier ("Joachim") and

19   Ron Spitz ("Spitz"). Allstate would assign Anthony F. Pinelli, Esq. ("Pinelli") of the

20   San Jose, CA  law firm Williams, Pinelli & Cullen to defend Joachim and Spitz.   Plaintiff

21   actively assisted Pinelli's defense of his clients which included numerous attacks on the first

22   amended complaint resulting in the Fourth amended complaint filed on February 14, 2006

23   adding the new defendant Carol Sier ("Carol"). The fourth amended complaint being the

24   final operative Plaintiff's pleading is attached hereto without the original exhibit dividers is

25   attached hereto as Exhibit 6.

26

27   Complaint                                                                    Page 4
     Hohs V. Allstate Insurance Company and Does 1 through 100 Inclusive

28

1     13. Carol's first appearance is a demurrer overruled on or about May 17, 2006.

2  Carol's motion to strike as a defendant is granted on or about July 7, 2006.

3  Torres and Ruzendall motion to amend the complaint adding Carol as defendant is opposed

4  by Carol and Hohs as cross-complainant. Hohs as defendant only files a joinder in opposition.

5  Plaintiff's legal research by finding the appellate case <u>Siam V. Kizilbash</u>

6  130 Cal.App. 4th 1563 (2005) results in Torres and Ruzendall voluntarily dismissing the

7  Fifth Cause of Action being malicious prosecution of the Fourth Amended Complaint on or

8  about April 7, 2006.

9

10     14. A second failed mediation is held on or about May 1, 2006 with Judge

11  Edward Infante, ret. ("Infante"). The lawsuit did not settle at mediation and Infante proposed

12  a mediation figure of $120,000.

13

14     15. The lawsuit throughout the rest of 2006 and early part of 2007 would slowly

15  grind its way with trial preparation including 1. Depositions of Hohs, Ruzendall, Torres and

16  percipient witnesses, Mary Jones, Scott Mcintyre, Lanae Andrade. 2. Depositions of Expert

17  Witnesses Nancy Cole and Bruce Wermuth, MD. 3. Numerous nonparty business record

18  subpoenas would be issued.

19

20

21     16. All of the lawsuit defendants being Hohs, Joachim and Spitz would proceed to

22  file motion for summary judgments on or about March 7, 2007 with a scheduled hearing

23  date of April 5,2007. A trial date is scheduled for April 11, 2007. Plaintiff proceeds to

24  plan for a trial with Hohs represented by counsel as defendant along with being *pro se* on

25  the cross-complaint.

26

27  Complaint                               Page 5
    Hohs V. Allstate Insurance Company and Does 1 through 100 Inclusive

28

1     .     17. Plaintiff on the eve of trial during the first week of April is informed that Allstate

2 contradics its numerous prior assertions of never settling the lawsuit wished to settle the lawsuit.

3 Plaintiff is informed that a new adjuster Jeff Jensen ("Jensen") would settle the lawsuit. Plaintiff

4 is informed that Jensen's attitude was to settle the lawsuit regardless of the merits and desired to

5 "get it off the desk". Plaintiff does not get a response to his inquiries regarding the sudden

6 change of affairs. Despite no opposition papers being filed for the Defendants', Joachim

7 and Spitz motion for summary judgment, Allstate would settle for $10,000 on behalf of

8 Joachim and Spitz.

9       18. Plaintiff, Torres and Ruzendall signed a settlement agreement on April 18, 2007.

10 The settlement agreement provided that "Michael Torres will permanently vacate the residence

11 at 5259 Cherry Gate Lane, San Jose, CA no later than seven (7) days after receipt of the

12 settlement checks by his attorney. He agrees he will only return to that residence and/or an

13 part of the Mansion Park condominium complex property for the sole purpose of preparing

14 said residence for sale. He agrees to give reasonable notice to his counsel, John Dinapoli of

15 his intent to be at the residence who will provide to David J. Stock, counsel for

16 STEPHEN HOHS" The settlement agreement also provided that Elizabeth Ruzendall would

17 also leave the residence "ELIZABETH RUZENDALL will list the property at 5259 Cherry

18 Gate Lane, San Jose for sale no later than thirty (30) days after receipt of the settlement checks

19 By her attorney. If the property has not sold within 150 days of listing, she agrees to

20 permanently vacate the residence. It is agreed by all parties hereto that she will return

21 periodically to the residence for the sole purpose of facilitating the sale of the residence,

22 and that she may rent the premises if the property does not sell within 150 days to offset

23 any debt service pending sale. She agrees that she will return to the property pending

24 sale only for mainteanance or inspection purposes and will not employ or utilize MICHAEL

25 TORRES for these purposes on her behalf. A copy of the settlement agreement is attached

26 hereto as Exhibit 7.

27 Complaint                                           Page 6
Hohs V. Allstate Insurance Company and Does 1 through 100 Inclusive

28

1    19. The lawsuit would not settle with the other defendants being Joachim and Spitz

2  until on or about August 13, 2007.  Torres and Ruzendall would breach the settlement's

3  agreement provision of departing the Association within a couple of weeks after signing the

4  agreement and would continue said breeches throughout the remainder of 2007 and into

5  January 2008.  Plaintiff throughout the remainder of 2007 and into January 2008 attempts

6  to ensure Torres and Ruzendall compliance to the settlement agreement.  Allstate assures

7  Plaintiff that it intends to enforce the settlement agreement.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27  Complaint                                                                 Page 7
Hohs V. Allstate Insurance Company and Does 1 through 100 Inclusive

28

1

## FIRST CAUSE OF ACTION BREACH OF WRITTEN CONTRACT

2

3      20. Plaintiff refers to, re-alleges, and hereby incorporates by reference the allegations

4   contained in paragraphs 1 through 19 of the complaint.

5

6      21. Allstate issued an insurance policy to  which obligated it to provide a timely

7   defense to Plaintiff in the matter of *Torres V. Hohs*, Santa Clara County Superior

8   Court Case No. 1-03-CV-006504 ("lawsuit").

9

10     22. Allstate and Does 1 through 100 breached their contractual duties to Plaintiff by

11  failing to provide Plaintiff a timely legal defense to the lawsuit along with local legal

12  representation until approximately July 2004.

13

14     23. Plaintiff has performed all contract conditions, except as otherwise waived or

15  excused.

16

17     24. Plaintiff as a result of Allstate's  and Does 1 through 100's breach of their

18  obligations have suffered damages, including but not limited to, expenses incurred in defending

19  the lawsuit, out-of-pocket expenses, incidental damages, and other financial losses in an amount

20  in excess of the minimum jurisdictional limit of the court.

21

22

23

24

25

26

27  Complaint                                                          Page 8
    Hohs V. Allstate Insurance Company and Does 1 through 100 Inclusive

28

1

## SECOND CAUSE OF ACTION  BREACH OF ORAL CONTRACT

2

3     25.  Plaintiff refers to, re-alleges, and hereby incorporates by reference the allegations

4  contained in paragraphs 1 through 24 of the complaint.

5

6     26.  Allstate and Does 1 through 100 orally assured Plaintiff that the lawsuit would

7  not be settled for more than a couple of thousand dollars.  Allstate and Does 1 through 100

8  also agreed that not settling the lawsuit for more than a couple of thousand dollars was a

9  consideration for Plaintiff's extensive legal work.

10

11     27.  Allstate and Does 1 through 100 breached said oral contract by settling the lawsuit

12  in the amount of $150,000 for the lawsuit Defendant Hohs.

13

14

15     28.  Plaintiff has performed all contract conditions, except as otherwise waived

16  or excused.

17

18     29.  Plaintiff as a result of Allstate's  and Does' 1 through 100  breach of their

19  obligations have suffered damages, including but not limited to, expenses incurred in defending

20  the lawsuit, out-of-pocket expenses, incidental damages, and other financial losses in an amount

21  in excess of the minimum jurisdictional limit of the court.

22

23

24

25

26

27  Complaint                                                            Page 9
   Hohs V. Allstate Insurance Company and Does 1 through 100 Inclusive

28

## THIRD CAUSE OF ACTION: BAD FAITH

30.  Plaintiff refers to, re-alleges, and hereby incorporates by reference the allegations contained in paragraphs 1 through 29 of the complaint.

31.  Allstate and Does 1 through 100 owed to Plaintiff the duties of good faith and fair dealing implied by law in every contract of insurance.

32.  Allstate and Does 1 through 100 breached these duties by, among other things, unreasonably and wrongfully: (a) failure to provide a timely legal defense to Plaintiff; (b) failure to initially provide local legal representation to Plaintiff; (c) representing to Plaintiff that it would never settle the lawsuit  for more than a token sum and later settling the lawsuit in April 2007 on the eve of trial for an amount greater than a mediator number proposed in May 2006.

33.  As a direct and legal result of Allstate's  and Does' 1 through 100  bad faith  actions, Plaintiff has suffered out-of-pocket expenses, other financial losses and incidental damages, emotional and mental distress, in an amount well in excess of the minimal jurisdiction of this Court.

## FOURTH CAUSE OF ACTION: GENERAL NEGLIGENCE

34. Plaintiff refers to, re-alleges, and hereby incorporates by reference the allegations contained in paragraphs 1 through 33 of the complaint.

35. Allstate owed Plaintiff a duty of reasonable care in undertaking the duties as required by the insurance policy.

36. Allstate breached said duty by: (1) Not providing a timely legal defense resulting in Plaintiff to act as a pro se litigant. (2) Initial legal representation offered would be a law firm located in Sacramento, CA approximately 200 miles away. (3) Without consulting Plaintiff changing law firms. (4) contradicting claims to Plaintiff that Allstate would never settle the lawsuit for more than a couple of thousand dollars decides to settle the lawsuit on eve of trial for $150,000. (5) Allstate passes on the opportunity to settle the lawsuit at a April 2006 mediation in the amount of $120,000.

37. As a direct and legal result of Allstate's and Does' 1 through 100 negligent actions, Plaintiff has suffered out-of-pocket expenses, other financial losses and incidental damages, emotional and mental distress, in an amount well in excess of the minimal jurisdiction of this Court.

---

Complaint                                                                          Page 11
Hohs V. Allstate Insurance Company and Does 1 through 100 Inclusive

-11-

# FIFTH CAUSE OF ACTION: FRAUD

38. Plaintiff refers to, re-alleges, and hereby incorporates by reference the allegations contained in paragraphs 1 through 37 of the complaint.

39. Allstate and Does 1 through 100 throughout the litigation of the lawsuit assured Plaintiff that it would never settle the lawsuit for more than a small token sum of a couple of thousand dollars. The lawsuit is settled by Allstate for the amount of $150,000 for Hohs contradicting prior assurances that it would not be settled for more than a small token sum of a couple of thousand dollars.

40. Plaintiff relied on Allstate's and Does' 1 through 100 assurances that the lawsuit would never be settled for more than a token sum of a couple of thousand dollars.

41. Plaintiff was justified in relying on Allstate's and Does' 1 through 100 assurances their statement that the lawsuit would not be settled for more than a small token sum of a couple of thousand dollars.

42. Allstate and Does 1 through 100 assurances that it would never settle the lawsuit for more than a small token sum of a couple of thousand dollars was made to induce Plaintiff to actively be involved with legal litigation and research in the lawsuit.

43. As a direct and legal result of Allstate's and Does 1 through 100's fraudulent actions, Plaintiff has suffered out-of-pocket expenses, other financial losses and incidental damages, emotional and mental distress, in an amount well in excess of the minimal jurisdiction of this Court.

## PLAINTIFF REQUESTS THAT ALLSTATE MAKE A TIMELY DECISION TO ELECT TO REMOVE TO FEDERAL COURT.

44. Plaintiff refers to, re-alleges, and hereby incorporates by reference the allegations contained in paragraphs 1 through 43 of the complaint.

45. Allstate removed cases listed below filed in the Santa Clara County Superior Court to the United States District Court for the Northern District of California San Jose Division.

    a. *Behrouz vs. Allstate Insurance Company and Does 1 through 100 inclusive* Case No. 106CV065091

    b. *Kelsey v. Allstate Insurance Company and Does 1 through 100 inclusive* Case No. 103CV011426

    c. *Ramil v. Allstate Insurance Company and Does 1 through 100 inclusive* Case No. 103CV010315

46. Plaintiff informs Allstate and Does 1 through 100 that while the amount sought in damages is unspecified, the amount in controversy will exceed $75,000. Plaintiff requests that Allstate make a timely decision should it wish to remove to Federal cour.

47. Plaintiff reserves the right to file a motion to remand should Allstate elect to remove the complaint to Federal court.

## DEMAND FOR JURY TRIAL

48. Plaintiff refers to, re-alleges, and hereby incorporates by reference the allegations contained in paragraphs 1 through 47 of the complaint.

49. Plaintiff hereby demands a jury trial for the complaint.

Complaint                                        Page 13
Hohs V. Allstate Insurance Company and Does 1 through 100 Inclusive

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

1. For general damages;

2. For special damages;

3. For prejudgment interest on the damages alleged herein as allowed by law;

4. For exemplary and punitive damages;

5. For attorneys' fees and costs;

6. For an injunctive order requiring that Plaintiff receive the requisite resources in the enforcement of the settlement agreement of *Torres V. Hohs*, Santa Clara County Superior Court Case No. 1-03-CV-006504 ("lawsuit") whose settlement agreement is attached as Exhibit 7 to the complaint.

7 For such other and further relief that the Court may deem just and proper.

Dated:  March 11, 2008

STEPHEN M. HOHS, Plaintiff in Pro Per

Complaint                                                                                              Page 14
Hohs V. Allstate Insurance Company and Does 1 through 100 Inclusive

# EXHIBIT 1



**Allstate.**

You're in good hands.

Dear Policyholder,

Please accept our sincere thanks for choosing Allstate. We value your business and appreciate the confidence you have placed in Allstate and your agent. We look forward to taking care of your insurance needs for years to come.

Enclosed is your new Allstate policy package, it is designed to give you the information you need about your policy. Your specific choices of coverage and coverage amounts appear on the Policy Declarations or Information page.

Your payment options are detailed on the payment notice. If there is an amount due, please mail your payment to us by the due date indicated on the form. A return envelope has been enclosed for your convenience.

*Thank you for allowing us to serve you. Remember, if there is anything we can do for you, or if you have any questions about your policy, please give your Allstate Agent a call. Your agent will be more than happy to help.*

Sincerely,

Richard I. Cohen
President
Allstate Insurance

Enclosures

X5443-4

R2853-1

SPECIAL FORM CUSTOMIZER POLICY NO. 050  001639

ALLSTATE INSURANCE COMPANY
CALIFORNIA REGIONAL COMMERCIAL CENTER
P O BOX 6509
DIAMOND BAR CA 91765-8509

Insured Name:    MANSION PARK HOMEOWNERS ASSOCIATION
Address:         1935 DRY CREEK RD 203
                 CAMPBELL CA 95008

Insured Copy ( Mailing Sheet )

BU114-2



**Allstate.**
You're in good hands.

March 20, 2003

Mansion Park Homeowners Association
c/o Luis Heredia -CMS
1935 Dry Creek Road #203
Campbell, CA 95008

Dear Luis and Board of Directors,

Enclosed please find the 2003-2004 insurance policies for Mansion Park Homeowners
Association. We truly appreciate your giving our office the opportunity to provide the
association with this coverage. *We have also included the following:*

- *Current coverage summary*
- *Disclosure form in compliance with civil code section 1365 (e)*
- Hired and non-owned auto liability as it is customary
- No annual aggregate limit for liability losses
- Three year extended reporting period option for directors and officers
- Increased building limit based on the current cost of construction

If you have any questions whatsoever please do not hesitate to call our office at any time.

Thank you for your business!

*Sincerely,*

Gwen Ware
in association with Dean Shibler
**License #0C24242**
(800) 573-0606



**Allstate.**
You're in good hands.

## *2003 – 2004 Coverage Summary for*
## *Mansion Park Homeowners Association*
### *(Policy period 2/03/03 to 2/03/04)*

### *Liability Coverages*

| | |
|---|---|
| General | $2,000,000 |
| Committees and Managers | Same |
| Directors and Officers (Claims made endorsement) | Same |
| *Non-Owned Auto* | Same |
| · Hired Auto | Same |

*(Paid per occurrence with NO Aggregate Limit)*

### *Building Coverages*

| | |
|---|---|
| Building Blanket Limit<br>  No Coinsurance | $10,340,000 |
| Additional Building Coverage<br>  Building Code Upgrades<br>  Ordinance Code Upgrades | $2,585,000 |
| **Building Deductible** | $2,500 |
| *Glass and Signs Deductible* | $100 |

### *Miscellaneous Coverages*

| | |
|---|---|
| Fidelity Bond Coverage | $50,000 |
| Contents/Valuable Papers | $10,000 |
| Medical Payments | $25,000 |

| | |
|---|---|
| ***Premium*** (050001639) | ***$14,293*** |

### *Additional Coverages*

| | |
|---|---|
| Fidelity Bond Coverage (050001640) | $300,000 |
| **Additional Premium** | **$454** |

R2853-1



## Payment Schedule for
## Mansion Park Homeowners Association

| 9 Pay Plan | | |
|---|---|---|
| **Customizer Premium** (Policy #050001639) | | $14,29 |
| **Customizer Premium** (Policy #050001640) | | $454 |
| **Payment Number** | **Payment Date** | **Amount Due** |
| 1 | 02/03/03 | $4,030.75  *(25% of premium+bond)* |
| 2 | 03/03/03 | $1,432.80 *(10% of premium)* |
| 3 | 04/03/03 | $1,432.80 *(10% of premium)* |
| 4 | 05/03/03 | $1,432.80 *(10% of premium)* |
| 5 | 06/03/03 | $1,432.80 *(10% of premium)* |
| 6 | 07/03/03 | $1,432.80 *(10% of premium)* |
| 7 | 08/03/03 | $1,432.80 *(10% of premium)* |
| 8 | 09/03/03 | $1,432.80 *(10% of premium)* |
| 9 | 10/03/03 | $718.15  *(5% of premium)* |

*Please note that each payment includes a $3.50 service fee.*

ALLSTATE INSURANCE COMPANY

DECLARATIONS

SPECIAL FORM CUSTOMIZER POLICY NO. 050 001639  CP

1. The Insured      MANSION PARK HOMEOWNERS ASSOCIATION
   Mailing Address  1935 DRY CREEK RD 203
                    CAMPBELL CA 95008


   LOCATION OF INSURED PREMISES: ( SEE BU5575-3 )


2. Policy Period from    02/03/03        to      02/03/04

        Beginning and ending 12:01 A.M. , Standard Time at the address of the insured stated above.

3. The Insured is a Corporation

4. ADDITIONAL INTERESTS
      This policy also covers the interests of any of the following when indicated by an "X" and named below.

      ____ *The Mortgagee under*        ____ *The Loss Payee under*         ____ Other
           Coverage A - Part One             Coverage A - Part Two

      ____ The Additional Insured        ____ The Vendor under
           for Leased Premises,               Coverage B - Part One
           under Coverage B - Part One


      Name       THERE ARE NO ADDITIONAL INTERESTS ON THIS POLICY
      Address

5. POLICY COVERAGES
      This policy applies to each of the Coverages and Parts shown below. Under Coverage A, Coverage is provided only for
      property at the Insured Premises for which a specific limit of liability is shown.

| COVERAGE A - Business Property | |
|---|---|
| Part One    Buildings  REPLACEMENT COST | Limits of Liability<br>$  SEE BU5575-3 |
| The Property Insurance<br>Adjustment Condition ___IS___ applicable to this policy | |
| Two    Business Contents | $ |
| DEDUCTIBLE  $ 2,500    Applicable to each adjusted loss | |

| COVERAGE B - Business Liability | |
|---|---|
| Part One    Comprehensive Liability | Limits of Liability<br>$  2,000,000 EACH ACCIDENTAL<br>EVENT |
| Fire and Specified Peril Legal Liability | $    50,000 EACH ACCIDENTAL<br>EVENT |
| Advertising Injury Liability | $   100,000 |
| Two    Medical Payments | $    5,000 EACH PERSON<br>$   25,000 EACH ACCIDENT |

ALLSTATE INSURANCE COMPANY

DECLARATIONS

SPECIAL FORM CUSTOMIZER POLICY NO. 050 001639  CP

6. Optional Coverages
   The following optional coverages, if any, are provided under this policy.

| Coverage | Location | Limits of Liability |
|---|---|---|
| BOARD OF MANAGERS LIABILITY | 001 | SEE COVERAGE B - PART SIX |
| EMPLOYERS NON-OWNERSHIP AUTO LIABILITY | 001 | SAME AS COVERAGE B - PART ONE |
| HIRED AUTO | 001 | SEE COVERAGE B - PART FOUR |
| | | |

7. Annual Premium for the Policy and Optional Coverages   $ 14,243.00

8. Endorsements: The following endorsements amend this policy.

| BU5550A | BU5575-3 | BU4258-1 | BU5552 | BU5562 | BU5564-1 | BU5583-1 | BU5651-7 | BU5696 | BU5697 |
| BU5701 | BU5754 | BU5756-1 | BU5766 | CL470A | | | | | |

IMPORTANT NOTICE TO FLORIDA POLICYHOLDERS: For inquiries, to obtain coverage information and to receive
assistance in resolving complaints, call (800)-729-3005 .

Countersigned by    CONFIDENCE PLUS INS.                          Authorized Agent

BU5570-4

BU114-2

SPECIAL FORM CUSTOMIZER POLICY NO. 050 001639 CP

SUPPLEMENTAL DECLARATIONS

5. Under Coverage A, insurance is provided only for property at the Insured Premises for which a specific limit of liability is shown.

Part One - Buildings

| Loc. No. | Bldg. No. | Insured Premises | RC or ACV * | Limits of Liability |
|----------|-----------|------------------|-------------|---------------------|
| 001 | 001 | 46-60 CHERRY CREST LANE<br>SAN JOSE                    CA  95136<br>FRAME          CONDOMINIUM BUILDING | RC | $ SEE BLANKET LIMIT |
| 001 | 002 | 47-61 CHERRY CREST LANE<br>SAN JOSE                    CA  95136<br>FRAME     CONDOMINIUM BUILDING | RC | $ SEE BLANKET LIMIT |
| 001 | 003 | 30-44 CHERRY CREST LANE<br>SAN JOSE                    CA  95136<br>FRAME          CONDOMINIUM BUILDING | RC | $ SEE BLANKET LIMIT |
| 001 | 004 | 31-45 CHERRY CREST LANE<br>SAN JOSE                    CA  95136<br>FRAME          CONDOMINIUM BUILDING | RC | $ SEE BLANKET LIMIT |
| 001 | 005 | 22-40 CHERRYTON LANE<br>SAN JOSE                    CA  95136<br>FRAME          CONDOMINIUM BUILDING | RC | $ SEE BLANKET LIMIT |
| 001 | 006 | 42-60 CHERRYTON LANE<br>SAN JOSE                    CA  95136<br>FRAME          CONDOMINIUM BUILDING | RC | $ SEE BLANKET LIMIT |
| 001 | 007 | 5251-5269 CHERRY GATE LANE<br>SAN JOSE                    CA  95136<br>FRAME          CONDOMINIUM BUILDING | RC | $ SEE BLANKET LIMIT |
| 001 | 008 | 53-69 CHERRY RIDGE CT<br>SAN JOSE                    CA  95136<br>FRAME          CONDOMINIUM BUILDING | RC | $ SEE BLANKET LIMIT |
| 001 | 009 | 51-80 CHERRY RIDGE CT<br>SAN JOSE                    CA  95136<br>FRAME          CONDOMINIUM BUILDING | RC | $ SEE BLANKET LIMIT |
| 001 | 010 | 62-80 CHERRY RIDGE LN<br>SAN JOSE                    CA  95136<br>FRAME          CONDOMINIUM BUILDING | RC | $ SEE BLANKET LIMIT |

* Valuation - RC = Replacement Cost;   ACV = Actual Cash Value

BU5575-3

BU114-2

SPECIAL FORM CUSTOMIZER POLICY NO. 050 001639 CP

SUPPLEMENTAL DECLARATIONS

5. Under Coverage A, insurance is provided only for property at the Insured Premises for which a specific limit of liability is shown.

Part One - Buildings

| Loc. No. | Bldg. No. | Insured Premises | RC or ACV * | Limits of Liability |
|---|---|---|---|---|
| 001 | 011 | 82-100 CHERRY RIDGE LN<br>SAN JOSE          CA 95136<br>FRAME          CONDOMINIUM BUILDING | RC | $<br>SEE BLANKET LIMIT |
| 001 | 012 | POOLHOUSE, CHERRY CREST LANE<br>SAN JOSE          CA 95136<br>FRAME          CONDOMINIUM BUILDING | RC | $<br>SEE BLANKET LIMIT |
| | | | BLANKET LIMIT | $ 10,340,000 |

* Valuation  -  RC = Replacement Cost;    ACV = Actual Cash Value

BUS575-3

BU114-2

# ALLSTATE CLAIM REPORTING

To report a claim on your Allstate Commercial policy, you may contact your agent for assistance or you may report your claim directly by contacting us at the *following phone numbers.*

To report a claim for:

Commercial Property/Casualty policies:          1(800) 359-1000

## CALIFORNIA CHANGES—SELECTION OF INDEPENDENT COUNSEL

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under this policy.

When this policy requires us to defend a legal action against you, the following conditions apply:

1. When a conflict of interest exists between you and us, we shall provide independent counsel you select to represent you, unless you waive, in writing, your right to such counsel.

2. If you do not waive your right as stated in No. 1 above, and you wish to select independent counsel, you will select three (3) or more such independent counsel from which we will choose one. Such independent counsel must meet the following qualifications:

   a. Independent counsel must have at least five (5) years of civil litigation practice which must include substantial defense experience in the subject at issue in the litigation; .

   b. Independent counsel must carry insurance against errors and omissions in the amount of at least $1,000,000 and must provide proof of such insurance upon our request; and

   c. Independent counsel must be of good repute, good standing in the community and licensed to appear and practice before the court in which litigation is brought.

3. Work performed by independent counsel shall be reasonable and necessary to your defense in the litigation brought.

4. Our obligation to pay fees to such independent counsel selected by you is limited to the rates which are actually paid by us to attorneys retained by us in the ordinary course of business in the defense of similar actions in the community where the claim arose or is being defended, whichever would be less.

5. Any dispute concerning attorney's fees shall be resolved by final and binding arbitration by a single neutral arbitrator selected by the parties to the dispute. If the parties are unable to agree, an arbitrator will be selected by the American Arbitration Association. Costs of such arbitration shall be paid equally by both parties.

Coverage A - Business Property
Coverage B - Business Liability

## Condominium Endorsement

This endorsement amends the policy Conditions and provisions as follows:

## Coverage A - Business Property

1. **Part One - Buildings** Property Covered is deleted and replaced with the following:

   **Property Covered**

   This policy covers the replacement cost (or the actual cash value, if such is indicated in the Declarations) of the building(s) for which a description and limit of liability is shown in the Declarations. This coverage includes the following items when on the *same premises:*

   a. Detachable building equipment, permanent fixtures, machinery and equipment such as heating and air conditioning and elevators used to provide building services.

   b. Additions and extensions to the described building. We also cover garages, storage buildings and swimming pools.

   c. *Yard fixtures such as fences, lamp posts and flag poles.*

   d. Construction materials and supplies that you intend to use to alter, repair or expand an insured building.

   e. Personal property you own and use to service or maintain the building(s), such as floor coverings and outdoor furniture.

   f. *Accounts receivable.*

   g. Outdoor trees, shrubs or plants on the premises for not more than $1,000 on any one item or a total amount not exceeding $5,000 in any one loss.

   h. Electrical and plumbing fixtures, interior partition walls, improvements and alterations comprising a part of the building, and refrigerators, heaters, air conditioners, cooking ranges, dishwashers, clothes washers, dryers, kitchen

BU5552
(Ed. 4-83)

**7. Loss Payable Clause** The Loss Payable Clause Condition under Coverage A is amended to include:

If an insurance trustee has been designated by you, loss will be adjusted with you, but will be payable to the designated insurance trustee. Payment of loss to the insurance trustee is a complete discharge of our liability under this policy for the loss.

## Coverage B - Business Liability

1. The Persons Insured section under Coverage B - Part One, Comprehensive Liability of this policy is amended to include the following as persons insured:

   a. The developer in his or her capacity as a unit-owner, but only with respect to his or her liability arising out of the ownership, maintenance or repair of that portion of the premises which is not owned solely by the developer or out of his or her membership in the association. However, the coverage provided to the developer does not apply to acts or omissions for which he or she may be held liable in its capacity as a developer.

   b. Each unit-owner of the described condominium, but only to liability arising out of the ownership, maintenance or repair of that portion of the premises which is not owned solely by the unit-owner or out of membership in the association.

2. The following new condition is added:

   Acts or Omissions by Unit-Owners

   No act or omission by any unit-owner, unless acting within the scope of his authority on behalf of the association, will void the policy or be a condition to recovery under the policy.

## Additional General Condition

General Condition, Recovering Damages from a Third Party, of this policy is amended to include:

We waive our right to subrogate against any unit-owner including the developer, members of his or her household and against the association and members of the board of directors for acts or omissions within the scope of their duties for the Insured. We have the right to subrogate against the developer for acts or omissions from which he or she may be held liable in his or her capacity as a developer.

## Coverage B – Business Liability

**Amendatory Endorsement - Asbestos Exclusion**

Your Customizer Policy is amended as follows:

Under Coverage B – Business Liability, "Exclusions – Liabilities We Do Not Cover," the following exclusion is added:

Any liability arising out of:

a.   Bodily injury, property damage, personal injury or advertising injury which in whole or in part involves asbestos; or

b.   Any obligation of any insured to indemnify or contribute with another person, corporation or other entity for damages arising out of bodily injury, property damage, personal injury or advertising injury which in whole or in part involves asbestos.

BU5754
(Ed. 3-97)

Coverage B - Business Liability

## Amendatory Endorsement for Customizer Policies
### (California)

A. *The Other Insurance Condition under Coverage A - Business Property is replaced by the following:*

### Other Insurance

*If both this insurance and other insurance apply to a loss, we will pay the proportionate amount that this insurance bears to the total amount of applicable insurance. However, in the event of a loss by theft, this insurance shall be excess over any other insurance that covers loss by theft. We will not pay more than the applicable limits of liability under this policy.*

B. *The following changes apply to the General Section:*

1. The Cancellation Condition is replaced by the following:

### Cancellation

   a.   **Your Right to Cancel**

   You may cancel this policy by sending us written notice stating at what future date you wish coverage to stop.

   b.   **Our Right to Cancel**

   1.   If this policy has been in effect for less than sixty (60) days, we may cancel this policy by mailing or delivering written notice at least fifteen (15) days before the effective date of cancellation.

   2.   If this policy has been in effect for sixty (60) days or more or is a renewal of a policy we issued, we may cancel this policy only for one or more of the following reasons:

   a.   Nonpayment of premium, including payment due on a prior policy issued by us and due during the current policy term covering the same risks;

   b.   A judgment by a court or an administrative tribunal that you have violated any law of California or of the United States having as one of its necessary elements an act which materially increases any of the risks insured against;

   c.   Discovery of fraud or material misrepresentation by either of the following:

   (1) *Persons insured or their representative in obtaining the insurance;*

   (2) You or your representative in pursuing a claim under the policy.

   d.   Discovery of you or your representative's willful or grossly negligent acts or omissions, or of any violation of state laws or regulations establishing safety standards, which materially increases any of the risks insured against;

   e.   Your or your representative's failure to implement reasonable loss control requirements which you agreed to as a condition of policy issuance or which were conditions precedent to the use by us of a particular rate or rating plan, if the failure materially increases any of the risks insured against;

   f.   A determination by the commissioner that the loss of, or changes in, our reinsurance covering all or part of the risk would threaten our financial integrity or solvency. A certification made under penalty of perjury to the commissioner by one of our officers of the loss of, or change in, reinsurance and that the loss or change will threaten our financial integrity or solvency if the cancellation of the policy is not permitted shall constitute such a determination unless disapproved by the commissioner within thirty (30) days of the filing;

BU5651-7                    Page 1 of 3
(Ed. 7-02)

outside the State of California, claims or disputes regarding that covered loss to property, or any other covered accidental event may be governed by the laws of the jurisdiction in which that covered loss to property, or other covered accidental event happened, only if the laws of that jurisdiction would apply in the absence of a contractual choice of law provision such as this.

**Where Lawsuits May Be Brought**

Subject to the following two paragraphs, any and all lawsuits in any way related to this policy, shall be brought, heard and decided only in a state or federal court located in the State of California. Any and all lawsuits against persons not parties to this policy but involved in the sale, administration, performance, or alleged breach of this policy, or otherwise related to this policy, shall be brought, heard and decided only in a state or federal court located in the State of California, provided that such persons are subject to or consent to suit in the courts specified in this paragraph.

If a covered loss to property, or any other accidental event accidental event for which coverage applies under this policy happens outside the State of California, lawsuits regarding that covered loss to property, or any other covered accidental event may also be brought in the judicial district where that covered loss to property, or any other covered accidental event happened.

Nothing in this provision, **Where Lawsuits May Be Brought**, shall impair any party's right to remove a state court lawsuit to a federal court.

4.    *In Definitions, the following is added to the definition of "Advertising injury":*

**"Advertising injury"** does not include injury arising out of or alleged to arise out of patent infringement, trademark infringement, statutory unfair competition, common law unfair competition, violations of the Lanham Patent Act and Lanham Trade-Mark Act or anti-trust violations

BU5651-7
(Ed. 7-02)

**Coverage A - Business Property**

## Collapse Endorsement

Coverage A, Collapse ---- Parts One and Two is replaced by the following:

**Collapse ---- Parts One and Two**

With respect to buildings:

a. Collapse means an abrupt falling down or caving in of a building or any part of a building with the result that the building or part of the building cannot be occupied for its intended purpose;
b. A building or any part of a building that is in danger of falling down or caving in is not considered to be in a state of collapse;
c. A part of a building that is standing is not considered to be in a state of collapse even if it has separated from another part of the building;
d. A building that is standing or any part of a building that is standing is not considered to be in a state of collapse even if it shows evidence of cracking, bulging, leaning, settling, shrinkage or expansion.

We will pay for direct physical loss or damage to covered property caused by collapse of a building or any part of a building that is insured under this policy, if the collapse is caused by one or more of the following:

1. Fire, lightening, windstorm, hail, explosion, smoke, aircraft, vehicles, riot, civil commotion, vandalism or malicious mischief, breakage of glass, falling objects, weight of snow, ice or sleet, water damage, all only as insured against in this policy. Water damage means the accidental discharge or leakage of water or steam as the direct result of the breaking apart or cracking of a plumbing, heating, air conditioning or other system or appliance (other than a sump system including its related equipment and parts), that is located on the described premises and contains water or steam;
2. Decay that is hidden from view, unless the presence of such decay is known to an insured prior to collapse;
3. Insect or vermin damage that is hidden from view, unless the presence of such damage is known to an insured prior to collapse;
4. Weight of people or personal property;
5. Weight of rain that collects on a roof;
6. Use of defective material or methods in construction, remodeling or renovation if the collapse occurs during the course of the construction, remodeling or renovation. However, if the collapse occurs after construction or renovation is complete and is caused in part by a cause of loss listed in 1 through 5 above we will pay for the loss or damage even if use of defective material or methods, in construction, remodeling or renovation, contributes to the collapse.

**Coverage A - Business Property**

## Collapse Endorsement

Coverage A, Collapse ---- Parts One and Two is replaced by the following:

### Collapse ---- Parts One and Two

With respect to buildings:

a. Collapse means an abrupt falling down or caving in of a building or any part of a building with the result that the building or part of the building cannot be occupied for its intended purpose;
b. A building or any part of a building that is in danger of falling down or caving in is not considered to be in a state of collapse;
c. A part of a building that is standing is not considered to be in a state of collapse even if it has separated from another part of the building;
d. A building that is standing or any part of a building that is standing is not considered to be in a state of collapse even if it shows evidence of cracking, bulging, leaning, settling, shrinkage or expansion.

We will pay for direct physical loss or damage to covered property caused by collapse of a building or any part of a building that is insured under this policy, if the collapse is caused by one or more of the following:

1. Fire, lightening, windstorm, hail, explosion, smoke, aircraft, vehicles, riot, civil commotion, vandalism or malicious mischief, breakage of glass, falling objects, weight of snow, ice or sleet, water damage, all only as insured against in this policy. Water damage means the accidental discharge or leakage of water or steam as the direct result of the breaking apart or cracking of a plumbing, heating, air conditioning or other system or appliance (other than a sump system including its related equipment and parts), that is located on the described premises and contains water or steam;
2. Decay that is hidden from view, unless the presence of such decay is known to an insured prior to collapse;
3. Insect or vermin damage that is hidden from view, unless the presence of such damage is known to an insured prior to collapse;
4. Weight of people or personal property;
5. Weight of rain that collects on a roof;
6. Use of defective material or methods in construction, remodeling or renovation if the collapse occurs during the course of the construction, remodeling or renovation. However, if the collapse occurs after construction or renovation is complete and is caused in part by a cause of loss listed in 1 through 5 above we will pay for the loss or damage even if use of defective material or methods, in construction, remodeling or renovation, contributes to the collapse.

**Allstate**

HOME OFFICE • NORTHBROOK, ILLINOIS

Endorsement No.

## CONDOMINIUM AMENDATORY ENDORSEMENT
## CL470A

*IT IS AGREED THAT EXCLUSION 2 UNDER EXCLUSIONS--LIABILITIES WE DO NOT COVER IN COVERAGE B--BUSINESS LIABILITY IS DELETED AND REPLACED BY THE FOLLOWING:*

2.  ANY ACCIDENTAL EVENT ARISING OUT OF THE OWNERSHIP, MAINTENANCE, OPERATION, USE, LOADING OR UNLOADING OF AIRCRAFT OR AUTOS THAT ARE OWNED, USED, RENTED OR BORROWED BY ANY PERSONS INSURED OR THEIR EMPLOYEES OR FOR WHICH LIABILITY IS ASSUMED UNDER ANY CONTRACT. AUTOS INCLUDE CARS, TRUCKS, TRAILERS AND OTHER LAND VEHICLES DESIGNED FOR TRAVEL ON PUBLIC ROADS, BUT NOT MOBILE EQUIPMENT.

    WE WILL COVER THE PARKING OF AUTOS ON YOUR PREMISES OR ADJACENT ROADWAYS, PROVIDED THE AUTO IS NOT OWNED, RENTED OR BORROWED BY ANY PERSONS INSURED OTHER THAN A UNIT OWNER OF THE CONDOMINIUM PREMISES;

    IT IS ALSO AGREED THAT THIS COVERAGE IS SUBJECT TO THE LIMITS *OF LIABILITY STATED IN THE DECLARATIONS FOR EACH ACCIDENTAL* EVENT UNDER COVERAGE B--PART ONE AND THE COVERAGE AFFORDED IS FOR ACCIDENTAL EVENTS AS DEFINED IN THE POLICY;

    IT IS FURTHER AGREED THAT SUCH INSURANCE AS IS AFFORDED BY THIS POLICY FOR THE PARKING OF AN AUTOMOBILE ON THE PREMISES IS EXCESS OF ANY OTHER INSURANCE.

This endorsement amends the policy to which it is attached as of the effective date and time of such policy, unless otherwise stated herein.

This endorsement is effective from _____, 19____, ☐ 12:01 A.M. ☐ 12:00 Noon  Standard time,

and forms a part of policy number _____ issued to _____

IN WITNESS WHEREOF, Allstate has caused this endorsement to be signed by its Secretary and its President at Northbrook, Illinois.

Secretary

Raymond H. Kiefer

President

BU75D4
(8-89)

## WITNESS CLAUSE

IN WITNESS WHEREOF, Allstate has caused this policy to be signed by two
*officers of the Company at Northbrook, Illinois.*

President                              Secretary

# EXHIBIT 2

1  the Association.

2      30.  Hohs breached his fiduciary duty to Plaintiff by

3  committing the acts described above.

4      *31.  As a result Hohs's breach of fiduciary duty, Plaintiff*

5  *suffered damages in an amount to be proven at trial.*

6

7              Fifth Cause of Action: Malicious Prosecution

8      32.  Plaintiff refers to, re-alleges, and incorporates by

9  this reference the allegations contained in paragraphs 1 through

10 3, and 6 of this Complaint.

11     33.  Hohs filed a petition for preliminary injunction against

12 Plaintiff, Case No. 1-03-CV818096.

13     34.  On or about July 11, 2003, Judge Cain heard Hohs's

14 petition and denied it on the grounds that Hohs did not meet the

15 standard necessary for issuance of a preliminary injunction.

16     35.  The Petition for Preliminary Injunction Prohibiting

17 Violence was brought without probable cause and was initiated by

18 Hohs with malice as an act of retribution.

19

20             Sixth Cause of Action: Enforcement of CC&R's

21     *36.  Plaintiff refers to, re-alleges, and incorporates by*

22 *this reference the allegations contained in paragraphs 1 through*

23 *5, and 9 of this Complaint.*

24     37.  The CC&R's of the Association require Association

25 approval prior to making any improvements or alterations to the

26 units of the Mansion Park Condominiums, of which Hoh's unit is a

27 part of.

28     38.  Hohs breached the CC&R's of the Association by making

1   alterations to his property without first obtaining approval from
2   the Association and without first obtaining permits from the
3   appropriate governing bodies.

4        39.   The CC&R's of the Association provide that no trade or
5   business shall be conducted in the condominiums of Mansion Park.

6        40.   Plaintiff is informed and believes, and alleges upon
7   such information and belief, that Defendant Hohs has breached the
8   CC&R's by renting out his garage to a mechanic for commercial use.

9        41.   It would be futile for Plaintiff to seek redress of
10  these violations with the Association, as Hohs serves as President
11  of the Association and would not take action against himself.

12       42.   The CC&R's of the Association provides any owner within
13  the Association with the right to enforce, by any proceeding at
14  law or in equity, all restrictions, conditions, covenants,
15  reservations, liens, and charges.

16       43.   The CC&R's provide that in any owner within the
17  Association shall be entitled to recover reasonable attorney's
18  fees as ordered by the Court in a suit to enforce the CC&R's.

19

20       WHEREFORE, Plaintiff prays for judgment against Defendants as
21  follows:

22

23       Under the First, Second, Third, and Fifth Causes of Action:

24       A.    For damages in excess of the jurisdictional limit of
25  this Court incurred by Plaintiff as a result of Defendants' torts,
26  in an amount to be proven at trial.

27       B.    For punitive damages against Hohs.

28       C.    For costs of suit incurred.

1  D.    For such other relief as the court deems just and
2  proper.

3

4  _Under the Fourth Cause of Action_:

5  A.    For damages in excess of the jurisdictional limit of
6  this Court incurred by Plaintiff as a result of _Hohs's torts_, in
7  an amount to be proven at trial.

8  B.    For costs of suit incurred.

9  C.    For such other relief as the court deems just and
10  proper.

11

12  Under the Sixth Cause of Action:

13  A.    For an injunction requiring Hohs to restore Hohs's
14  Property to its original condition prior to the time Hohs made
15  physical improvements and alterations to his Condominium.

16  B.    For an injunction prohibiting Hohs from renting his
17  garage for commercial use.

18  C.    For costs of suit incurred, including reasonable
19  attorney's fees.

20  D.    For such other relief as the court deems just and
21  proper.

22

23  Dated:    October 2 , 2003

Jeffrey P. Widman, Esq.
24                                Attorney for Plaintiff
Michael J. Torres

25

26

27

28

Complaint                                                          8

1  Jeffrey P. Widman, Esq. (SBN 58628)
   Timothy D. Widman, Esq. (SBN 189182)
2  Mason Tse, Esq.  (SBN 199301)
   LAW OFFICES OF JEFFREY P. WIDMAN
3  101 Race Street, Suite 100
   San Jose, California 95126-3041
4  Telephone: (408) 288-6777
   Facsimile: (408) 288-7668
5
   Attorney for Plaintiff
6  Michael J. Torres
7
8           SUPERIOR COURT CALIFORNIA, COUNTY OF SANTA CLARA
9                      [UNLIMITED JURISDICTION]

10  MICHAEL J. TORRES,              )    CASE NO. 103CV006504
                                    )
11                                  )    COMPLAINT
              Plaintiff,            )
12  vs.                             )
                                    )
13  STEPHEN M. HOHS, and            )
    DOES 1 through 50, inclusive,   )
14                                  )
              Defendants.           )
15  _____  )

16        Plaintiff alleges:

17                    PRELIMINARY ALLEGATIONS

18        1.    Plaintiff  Michael  J.  Torres  ("Plaintiff")  is  an

19  individual residing at 5259 Cherry Gate Lane, San Jose, California

20  (the "Condominium").

21        2.    Defendant Stephen M. Hohs ("Hohs") is an individual

22  residing at 61 Cherry Crest Lane, San Jose, California.

23        3.    Plaintiff is ignorant of the true names and capacities

24  of Defendants sued as Does 1 through 50, inclusive, and therefore

25  sues these Defendants by such fictitious names.   Plaintiff will

26  amend this Complaint to allege their true names and capacities

27  when ascertained.    Plaintiff is informed and believes, and so

28  alleges based upon such information and belief, that Defendants

_____
Complaint                                                    1

1  Does 1 through 50 claim have acted in concert with Hohs and each
2  other defendant, as employee, agent, or otherwise, to commit the
3  acts and cause the injury to Plaintiff alleged in this Complaint.
4      4.  Plaintiff is a member of a homeowners association named
5  Mansion  Park  Homeowners  Association  ("Association").    The
6  Association holds responsibility for management of the common area
7  associated with Plaintiff's Condominium.
8      5.  Hohs is also a member of the Association.  At all times
9  relevant to this Complaint, Hohs served as the President of the
10 Association and a member of its Board of Directors.
11     6.  Beginning in June 2003 and continuing to the present
12 time, Hohs committed a series of actions intended to harass, to
13 humiliate, to embarrass, and to disturb Plaintiff and to deprive
14 him of quiet and peaceful enjoyment in occupying the Condominium.
15 These acts included, among other things, the unwarranted towing of
16 Plaintiff's vehicles, unjustified citations to Plaintiff for
17 violation of the Association's Enabling Declaration ("CC&R's"),
18 the filing of petitions for restraining orders without probable
19 cause, calling the San Jose Police Department to arrest Plaintiff
20 without probable cause, and the making of oral and written
21 statements designed to defame Plaintiff and/or to invade his
22 personal privacy.
23     7.  In doing the acts alleged in the preceding paragraph,
24 Hohs made unauthorized and improper use of the Association's
25 records and property.  As an example, Hohs obtained mailing labels
26 from the Association for the purpose of delivering letters to all
27 members of the Association for the purpose of carrying out his
28 personal vendetta against Plaintiff.

1   8.   Plaintiff is informed and believes, and so alleges based
2   upon  such  information  and  belief,  that  Hohs  authorized  the
3   spending of the Association's funds for the purpose of enhancing
4   his  own  condominium  without  benefitting  the  Association  as  a
5   whole.

6   9.   Plaintiff is informed and believes, and so alleges based
7   upon  such  information  belief,  that  Hohs  has  made  physical
8   alterations  and  improvements  to  his  condominium  without  first
9   having  received  approval  from  the  Association  and  without
10  obtaining required building permits from the City of San Jose.

11  10.   On or about August 13, 2003 Hohs mailed or personally
12  delivered to all members of the Association a letter concerning
13  Plaintiff.  Hohs did not sign the letter for fear of making his
14  identity known and exposing himself to liability.  The letter
15  contained  a  series  of  statements  concerning  Plaintiff  not
16  generally known to the public, and not previously known to other
17  members of the Association.  The statements cast Plaintiff in an
18  unflattering light and invaded Plaintiff's right to privacy.

19  11.   In a further effort to annoy and embarrass Plaintiff,
20  Hohs wrote letters to Plaintiff's mother, a co-owner of the
21  Condominium but not a resident, concerning Plaintiff's supposed
22  violations of the Association's CC&R's.  Those letters contained
23  untrue statements concerning Plaintiff's conduct.  The letters
24  were designed to cause anxiety on the part of Plaintiff's mother,
25  who is elderly and in poor health.

26  //
27  //
28  //

Complaint                                                          3

1    First Cause of Action: Invasion of Privacy

2        12.    Plaintiff refers to, re-alleges, and incorporates by

3    this reference the allegations contained in paragraphs 1 through

4    6, and 10 through 11 of this Complaint.

5        13.    On or about August 13, 2003, Hohs, without privilege and

6    without Plaintiff's consent, sent a letter detailing Plaintiff's

7    long past conduct to Plaintiff's mother and members of the

8    Association.

9        14.    The information disclosed in Hohs's letter was not of a

10   legitimate public concern and would be offensive and objectionable

11   to a reasonable person.

12       15.    Hohs's publication of the letter exposed Plaintiff to

13   contempt   and   ridicule   and   caused   him   mental   anguish,

14   embarrassment, and humiliation.

15       16.    Hohs's conduct was willful, deliberate, and malicious.

16

17    Second Cause of Action: Defamation

18       17.    Plaintiff refers to, re-alleges, and incorporates by

19   this reference the allegations contained in paragraphs I through

20   6, and 10 through 11 of this Complaint.

21       18.    Hohs has published false and unprivileged writings

22   exposing Plaintiff to hatred, contempt, ridicule, or disgrace and

23   caused Plaintiff to be shunned or avoided.

24       19.    Hohs has made false and unprivileged oral publications

25   charging Plaintiff with a crime or having been indicted,

26   convicted, or punished for committing a crime.

27       20.    As a result of Hohs's writings and oral publications,

28   Plaintiff has been injured in respect to his profession, trade or

1  business in an amount in excess of the jurisdictional limit,  to

2  be proven trial.

3      21.  Hohs made his writings and oral publications with malice

4  and an intent to injure Plaintiff.

5

6      Third Cause of Action: Infliction of Emotional Distress

7      22.  Plaintiff refers to, re-alleges, and incorporates by

8  this reference the allegations contained in paragraphs 1 through

9  6, and 10 through 11 of this Complaint.

10     23.  Hohs breached his duty of care to Plaintiff by engaging

11  in outrageous, unprivileged conduct against Plaintiff.

12     24.  Hohs  either  intended  to cause Plaintiff emotional

13  distress or engaged in the conduct described above with reckless

14  disregard of the probability of causing Plaintiff emotional

15  distress.   Plaintiff was present at the time the outrageous

16  conduct occurred and Hohs knew that Plaintiff was present.

17     25.  Plaintiff suffered severe emotional distress.

18     26.  The outrageous and unprivileged conduct of Hohs was a

19  cause of the emotional distress suffered by Plaintiff.

20     27.  Hohs engaged in the conduct described above with malice

21  and an intent to injure Plaintiff.

22

23      Fourth Cause of Action: Breach of Fiduciary Duty

24     28.  Plaintiff refers to, re-alleges, and incorporates by

25  this reference the allegations contained in paragraphs 1 through

26  11 of this Complaint.

27     29.  Hohs, as President of the Association and a member of

28  its Board of Directors, owed a fiduciary duty to Plaintiff and to

1  the Association.

2      30.  Hohs breached his fiduciary duty to Plaintiff by

3  committing the acts described above.

4      31.  As a result Hohs's breach of fiduciary duty, Plaintiff

5  suffered damages in an amount to be proven at trial.

6

7              Fifth Cause of Action: Malicious Prosecution

8      32.  Plaintiff refers to, re-alleges, and incorporates by

9  this reference the allegations contained in paragraphs 1 through

10  3, and 6 of this Complaint.

11      33.  Hohs filed a petition for preliminary injunction against

12  Plaintiff, Case No. 1-03-CV818096.

13      34.  On or about July 11, 2003, Judge Cain heard Hohs's

14  petition and denied it on the grounds that Hohs did not meet the

15  standard necessary for issuance of a preliminary injunction.

16      35.  The Petition for Preliminary Injunction Prohibiting

17  Violence was brought without probable cause and was initiated by

18  Hohs with malice as an act of retribution.

19

20              Sixth Cause of Action: Enforcement of CC&R's

21      36.  Plaintiff refers to, re-alleges, and incorporates by

22  this reference the allegations contained in paragraphs 1 through

23  5, and 9 of this Complaint.

24      37.  The CC&R's of the Association require Association

25  approval prior to making any improvements or alterations to the

26  units of the Mansion Park Condominiums, of which Hoh's unit is a

27  part of.

28      38.  Hohs breached the CC&R's of the Association by making

1  alterations to his property without first obtaining approval from

2  the Association and without first obtaining permits from the

3  appropriate governing bodies.

4      39.  The CC&R's of the Association provide that no trade or

5  business shall be conducted in the condominiums of Mansion Park.

6      40.  Plaintiff is informed and believes, and alleges upon

7  such information and belief, that Defendant Hohs has breached the

8  CC&R's by renting out his garage to a mechanic for commercial use.

9      41.  It would be futile for Plaintiff to seek redress of

10  these violations with the Association, as Hohs serves as President

11  of the Association and would not take action against himself.

12      42.  The CC&R's of the Association provides any owner within

13  the Association with the right to enforce, by any proceeding at

14  law or in equity, all restrictions, conditions, covenants,

15  reservations, liens, and charges.

16      43.  The CC&R's provide that in any owner within the

17  Association shall be entitled to recover reasonable attorney's

18  fees as ordered by the Court in a suit to enforce the CC&R's.

19

20      WHEREFORE, Plaintiff prays for judgment against Defendants as

21  follows:

22

23      Under the First, Second, Third, and Fifth Causes of Action:

24      A.  For damages in excess of the jurisdictional limit of

25  this Court incurred by Plaintiff as a result of Defendants' torts,

26  in an amount to be proven at trial.

27      B.  For punitive damages against Hohs.

28      C.  For costs of suit incurred.

1    D.    For such other relief as the court deems just and
2 proper.

3

4    _Under the Fourth Cause of Action_:

5    A.    For damages in excess of the jurisdictional limit of
6 this Court incurred by Plaintiff as a result of *Hohs's torts, in*
7 *an amount to be proven at trial.*

8    B.    For costs of suit incurred.

9    C.    For such other relief as the court deems just and
10 proper.

11

12    Under the Sixth Cause of Action:

13    A.    For an injunction requiring Hohs to restore Hohs's
14 Property to its original condition prior to the time Hohs made
15 physical improvements and alterations to his Condominium.

16    B.    For an injunction prohibiting Hohs from renting his
17 garage for commercial use.

18    C.    For costs of suit incurred, including reasonable
19 attorney's fees.

20    D.    For such other relief as the court deems just and
21 proper.

22

23 Dated:    October 2 , 2003

Jeffrey P. Widman, Esq.
24                                                        Attorney for Plaintiff
                                                          Michael J. Torres
25

26

27

28

Complaint                                                                    8

# EXHIBIT 3

Stephen M. Hohs
61 Cherry Crest Lane
San Jose, CA 95136-3618

Telephone Number: (408) 225-4353

Defendant, In Pro Per

FILED, Santa Clara Co
11/04/03   3:34pm
Kiri Torre
Clerk Of Cour
By: ceciliaa disclerk

CK          $271.2
TL          $271.2
Case: 1-03-CV-006504

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF SANTA CLARA

## UNLIMITED CIVIL JURISDICTION

MICHAEL J. TORRES               )     CASE NO. 1-03-CV-006504
                                )
            Plaintiff,          )     **ANSWER TO COMPLAINT**
                                )
                                )
       vs.                      )
                                )
                                )
STEPHEN M. HOHS, and            )
DOES 1 through 50, inclusive    )
                                )
            Defendants,         )
_____)

THE FOREGOING INSTRUMENT IS
A CORRECT COPY OF THE ORIGINAL
ON FILE IN THIS OFFICE
ATTEST: KIRI TORRE

DEC 0 2 2003

        Defendant, Stephen M. Hohs, answers the complaint of Plaintiff, Michael J. Torres,

in this action as follows:

### RESPONSE TO PRELIMINARY ALLEGATIONS

        1. Answering paragraph 1, Defendant admits that Plaintiff is an individual residing at 5259

Cherry Gate Lane, San Jose, California.

        2. Answering paragraph 2, Defendant admits that he is an individual residing at 61 Cherry

Crest Lane, San Jose, California.

        3. Answering paragraph 3, Defendant denies the allegations in this paragraph.

Answer to Complaint                                                Page 1

-1-

4. Answering paragraph 4, *Defendant denies the allegations in this paragraph.*

5. Answering paragraph 5, Defendant admits to being a member of the Association and *is currently President of the Association's* Board of Directors and a member of the Board of Directors. Defendant is without sufficient information or belief to admit or deny the remaining allegations in this paragraph as to being either the President or a member of the board of directors at all times relevant to this complaint. Based on this lack of information or belief, Defendant denies the remaining allegations.

6. Answering paragraph  6, Defendant denies the allegations in this paragraph.

7. Answering paragraph  7, Defendant denies the allegations in this paragraph.

8. Answering paragraph  8, Defendant denies the allegations in this paragraph.

9. Answering paragraph  9, Defendant denies the allegations in this paragraph.

10. Answering paragraph 10, Defendant denies the allegations in this paragraph.

11. Answering paragraph 11, Defendant denies the allegations in this paragraph.

## RESPONSE TO FIRST CAUSE OF ACTION: INVASION OF PRIVACY

12. Answering paragraph 12, Defendant re-alleges and incorporates by reference the admissions, allegations, and denials in paragraphs 1 through 11 of this answer.

13. Answering paragraph 13, Defendant denies the allegations in this paragraph.

14. Answering paragraph 14, *Defendant denies the allegations in this paragraph.*

15. Answering paragraph 15, Defendant denies the allegations in this paragraph.

16. *Answering paragraph 16, Defendant denies the allegations in this paragraph.*

//

//

//

Answer to Complaint                                                    Page 2

## RESPONSE TO SECOND CAUSE OF ACTION: DEFAMATION

17.  Answering paragraph 17, Defendant re-alleges and incorporates by reference the admission, allegations, and denials in paragraphs 1 through 6, and 10 through 11 of this answer.

18.  Answering paragraph 18, Defendant denies the allegations in this paragraph.

19.  Answering paragraph 19, Defendant denies the allegations in this paragraph.

20.  Answering paragraph 20, Defendant denies the allegations in this paragraph.

21.  Answering paragraph 21, Defendant denies the allegations in this paragraph.

## RESPONSE TO THIRD CAUSE OF ACTION: INFLICTION OF EMOTIONAL DISTRESS

22.  Answering paragraph 22, Defendant re-alleges and incorporates by reference the admissions, allegations and denials in paragraphs 1 through 6, and 10 through 11 of this answer.

23.  Answering paragraph 23, Defendant denies the allegations in this paragraph.

24.  Answering paragraph 24, Defendant denies the allegations in this paragraph.

25.  Answering paragraph 25, Defendant denies the allegations in this paragraph.

26.  Answering paragraph 26, Defendant denies the allegations in this paragraph.

27.  Answering paragraph 27, Defendant denies the allegations in this paragraph.

## RESPONSE TO FOURTH CAUSE OF ACTION: BREACH OF FIDUCIARY DUTY

28.  Answering paragraph 28, Defendant re-alleges and incorporates by reference the admissions, allegations and denials in paragraphs 1 through 11 of this answer.

29.  Answering paragraph 29, Defendant denies the allegations in this paragraph.

30.  Answering paragraph 30, Defendant denies the allegations in this paragraph.

31.  Answering paragraph 31, Defendant denies the allegations in this paragraph.

Answer to Complaint                                                     Page 3

## RESPONSE TO FIFTH CAUSE OF ACTION: MALICIOUS PROSECUTION

32. Answering paragraph 32, Defendant re-alleges and incorporates by reference the admissions, allegations, and denials in paragraph 1 through 3, and 6 of this answer.

33. Answering paragraph 33, Defendant admits to filing the civil action 1-03-CV-818096 against Plaintiff. Defendant denies the remaining allegations in this paragraph.

34. Answering paragraph 34, Defendant denies the allegations in this paragraph.

35. Answering paragraph 35, Defendant denies the allegations in this paragraph.

## RESPONSE TO SIXTH CAUSE OF ACTION: ENFORCEMENT OF CC&R'S

36. Answering paragraph 36, Defendant re-alleges and incorporates by reference the admissions, allegations, and denials in paragraph 1 through 5, and 9 of this answer.

37. Answering paragraph 37, Defendant denies the allegations in this paragraph.

38. Answering paragraph 38, Defendant denies the allegations in this paragraph.

39. Answering paragraph 39, Defendant denies the allegations in this paragraph.

40. Answering paragraph 40, Defendant denies the allegations in this paragraph.

41. Answering paragraph 41, Defendant denies the allegations in this paragraph.

42. Answering paragraph 42, Defendant denies the allegations in this paragraph.

43. Answering paragraph 43, Defendant denies the allegations in this paragraph.

## FIRST AFFIRMATIVE DEFENSE

44. The complaint and each cause action fail to state facts sufficient to constitute a cause of action against the Defendant.

Answer to Complaint                                                      Page 4

1

## SECOND AFFIRMATIVE DEFENSE

2

3

45.  Plaintiff is barred from any recovery including injunctive relief on the Complaint

4

under the doctrine of laches.

5

6

## THIRD AFFIRMATIVE DEFENSE

7

8

46. Plaintiff is barred from relief of any nature, including but not limited to

9

financial, punitive and injunctive relief on the doctrine of estoppel.

10

11

## FOURTH AFFIRMATIVE DEFENSE

12

13

47. Plaintiff is barred from any recovery or relief on the Complaint under the doctrine of

14

waiver.

15

16

## FIFTH AFFIRMATIVE DEFENSE

17

18

48. This complaint is barred by the fact that Plaintiff lacks standing to bring an action.

19

Defendant owes no duty to respond to Plaintiff's allegations in the complaint.

20

21

## SIXTH AFFIRMATIVE DEFENSE

22

23

49. This action is barred by the appropriate statutes of limitation, including, but not

24

limited to the following separate and distinct sections of *California Code of Civil Procedure:*

25

337.15,338,339,340, *et seq.*

26

27

Answer to Complaint                                                          Page 5

28

## SEVENTH AFFIRMATIVE DEFENSE

50. The oral and written publications which are the basis of the complaint are truthful, newsworthy and reveals no facts which are so offensive as to shock the community's notion of decency. The oral and written publications are newsworthy in the published facts related to the public activities of the community.

## EIGHTH AFFIRMATIVE DEFENSE

51. Plaintiff is a public figure and has therefore relinquished his right to privacy in the matter which is the subject of this complaint. That Plaintiff is a public figure is demonstrated by, among other things, Plaintiff's prominent activism in the homeowner's association including but not limited to efforts to remove and replace the Association's board of directors.

## *NINTH AFFIRMATIVE DEFENSE*

52. The oral and written publications referred to in Plaintiff's complaint are true accurate in all respects to be shown by proof at trial.

## TENTH AFFIRMATIVE DEFENSE

53. The oral and written publications referred to in the complaint was published without negligence or recklessness as to any falsehood, or knowledge of any falsehood. The oral and written publications is therefore protected by a constitutional privilege.

---

Answer to Complaint                                                    Page 6

## ELEVENTH AFFIRMATIVE DEFENSE

54. The complaint and each cause of action is barred in that Plaintiff with full knowledge of the circumstances, consented to all acts and conduct of the Defendant alleged in the complaint and each alleged cause of action in the complaint.

## TWELVETH AFFIRMATIVE DEFENSE

55. The complaint and each cause of action is barred in that at all times relevant, Defendant acted reasonably, in good faith and with a view to the best interests of the Association and its members.

## THIRTEENTH AFFIRMATIVE DEFENSE

56. Defendant alleges that Plaintiff's complaint is barred in that Defendant is a volunteer director of the Mansion Park Homeowner's Association, acting in good faith within the scope of Defendant's duties. At all relevant times, the homeowners' association maintained and had in effect sufficient general liability insurance pursuant to Civil Code Section 1365.7. Therefore, Plaintiff is not entitled to recover damages from Defendant, pursuant to Civil Code Section 1365.7

## FOURTEENTH AFFIRMATIVE DEFENSE

57. Plaintiff cannot enforce equitable restrictions regarding Defendant's residence since Plaintiff has materially violated the same restriction stated in the complaint. Thus, Plaintiff is barred from any injunctive relief.

Answer to Complaint                                                    Page 7

## FIFTEENTH AFFIRMATIVE DEFENSE

58.  Defendant had a statutory duty to disclose the information on which Plaintiff bases his claim on an invasion of privacy.  Plaintiff's allegations which included but not limited to the operation of the Mansion Park Homeowner's Association whose  public disclosure is mandated by the Davis Sterling Act, California Civil Code Section 1350 to 1374.

## SIXTEENTH AFFIRMATIVE DEFENSE

59.  Defendant alleges that he acted without malice and with probable cause when initiating the underlying civil harassment proceedings against Plaintiff.  Despite the dismissal of Defendant's complaint, Defendant had probable cause to bring the civil harassment proceeding.

## *SEVENTEENTH AFFIRMATIVE DEFENSE*

60.  Any injury, damage, or loss, in any, sustained by Plaintiff herein was due and proximately caused by the third parties, such that any award against Defendant should be reduced accordingly.

## EIGHTEENTH AFFIRMATIVE DEFENSE

61.  Plaintiff is barred from any recovery against Defendant by reason of the doctrines of offset and recoupment, in that Defendant have been damaged by the actions and omissions of Plaintiff in a sum equal to or greater than the claims alleged by Plaintiff in this complaint.

//

//

Answer to complaint                                              Page 8

1

### NINETEENTH AFFIRMATIVE DEFENSE

2

3    62. Plaintiff failed to mitigate its damages, if any, and accordingly, is not entitled to

4    the relief sought in the complaint.

5

6    ### TWENTYTH AFFIRMATIVE DEFENSE

7

8    63. The Complaint, and each cause of action thereof, is barred by the failure of (a)

9    condition(s) precedent to be performed by Plaintiff.

10

### TWENTYFIRST AFFIRMATIVE DEFENSE

11

12    64. The Complaint, and each cause of action thereof, is barred by failure and/or lack

13    of consideration.

14

15    ### TWENTYSECOND AFFIRMATIVE DEFENSE

16

17    65. Plaintiff was careless and negligent in and about the matters referred to in the

18    Complaint and said carelessness and negligence on the part of the Plaintiff acts as an offset to

19    any of Plaintiff's damages, if any there be.

20

WHEREFORE, Defendant prays for judgment against Plaintiff as follows:

21

1. Plaintiff takes nothing by this Complaint and for judgment in favor of the Defendant

22

2. Defendant be awarded costs of suit incurred, including reasonable attorney fees.

23

3. For such other relief as the court deems proper.

24

25    Dated:    November 4, 2003

26    Stephen M. Hohs
      Defendant, In Pro Per

27

Answer to Complaint                                    Page 9

28

# EXHIBIT 4

1   Stephen M. Hohs
    61 Cherry Crest Lane
2   San Jose , CA 95136-3618

3   Telephone Number: (408) 225-4353

4   Cross-Complainant and Defendant, In Pro Per

FILED

2003 NOV -4 PM 3: 21

KIRI TORRE
CHIEF EXEC OFFICER/CLERK
SUPER CT CRT OF CA
COUNTY OF SANTA CLARA
BY_____
C. Arreguin
DEPUTY

6       SUPERIOR COURT OF THE STATE OF CALIFORNIA

7           COUNTY OF SANTA CLARA

8        UNLIMITED CIVIL JURISDICTION

10   MICHAEL J. TORRES          )    CASE NO.  1-03-CV-006504
                                )
11          Plaintiff,          )    CROSS-COMPLAINT
                                )
12                              )
     vs.                        )
13                              )
                                )
14   STEPHEN M. HOHS, and       )
     DOES 1 through 50, inclusive, )
15                              )    THE FOREGOING INSTRUMENT IS
            Defendants,         )    A CORRECT COPY OF THE ORIGINAL
16                              )    ON FILE IN THIS OFFICE
                                )    ATTEST: KIRI TORRE
17                                   DEC 0 2 2003
     STEPHEN M. HOHS            )
18                              )    EXECUTIVE OFFICER/CLERK
            Cross-              )    SUPERIOR COURT OF CA COUNTY OF SANTA CLARA
19          Complainant         )    IN AND FOR THE COUNTY OF SANTA CLARA
            and                 )    BY_____ DEPUTY
20          Defendant,          )
                                )
21   vs.                        )
                                )
22   MICHAEL J. TORRES,         )
     SALVADOR NAVARRO,          )
23   MARIA NAVARRO, and         )
     DOES 1 through 50, inclusive, )
24                              )
            Cross-              )
25          Defendants          )

27   Cross-Complaint                              Page 1

                        -1-

Cross-Complainant alleges:

## PRELIMINARY ALLEGATIONS

1. Cross-Complainant Stephen M. Hohs ("Cross-Complainant") is an individual residing at 61 Cherry Crest Lane, San Jose, California

2. Cross-Defendant, Michael J. Torres is an individual residing at 5259 Cherry Gate Lane San Jose, CA (the "Condominium").

3. Cross-Defendant, Salvador Navarro, is a non-resident co-owner of the Condominium.

4. Cross-Defendant, Maria Navarro, is a non-resident co-owner of the Condominium.

5. Cross-Complainant is ignorant of true names and capacities of Defendants sued as Does 1 through 50, inclusive, and therefore sues these Defendants by such fictitious names. Cross-Complainant will amend this Cross-Complaint to allege their true names and capacities When Ascertained. Cross-Complainant is informed and believes, and so alleges based upon such information and believe, that Cross-Defendants Does 1 through 30, inclusive have acted in in concert with Cross-Defendants and each other Cross-Defendant, as employee agent, or otherwise, to commit the acts and cause the injury to Cross-Complainant alleged in the Cross-Complaint.

6. On or about May 21, 1991 , Cross-Defendants, Salvador Navarro and Maria Navarro, became co-owners of 5259 Cherry Gate Lane, San Jose, California.

7. Before July 9, 2003, Cross-Defendant, Michael J. Torres had no ownership interest in the Mansion Park homeowner's association. (the Association ). Cross-Defendant, Michael J. Torres was a non-owner occupant of the Condominium.

8. On or about July 9, 2003, a grant deed giving a Mike J. Torres a 1% ownership interest in the Condominium was recorded at the Santa Clara County Recorder.

9. On or about July 9, 2003, Cross-Defendant, Michael J. Torres proceeded to orally publish in the community that he was the sole owner of the Condominium.

Cross-Complaint                                          Page 2

1    10.  On or about May 2003, Cross-Defendant, Michael J. Torres was removed from the

2   Association's board of directors.

3    11.  Beginning in May 2003 and continuing to the present time, Cross-Defendant

4   Michael J. Torres committed a series of actions intended to harass, to embarrass, to humiliate

5   and to disturb Cross-Complainant of peaceful and quiet enjoyment of his residence.

6    12.  Beginning in May 2003 and continuing to the present time, Cross-Defendant

7   Michael J. Torres proceeded to make false accusations regarding Cross-Complainant's conduct

8   to government agencies including San Jose Police Department and San Jose Code Enforcement.

9    13.  In a systematic campaign to annoy and embarrass the Cross-Complainant, the

10   Cross-Defendant, Michael J. Torres proceeded from May 2003 until the present time to

11   make false written and oral publications regarding Cross-Complainant's conduct designed to

12   defame Cross-Complainant and/or to invade his personal privacy.

13    14.  Beginning in August 2003, Cross-Complainant wrote to Cross-Defendants,

14   Salvador Navarro and Maria Navarro, describing fellow Cross-Defendant, Michael J. Torres

15   personal conduct resulting in police response at the Association to an alleged assault and battery

16   by the Cross-Defendant, Michael J. Torres.  All written correspondence to the Cross-Defendants,

17   Salvador Navarro and Maria Navarro were unanswered.

18    15.  Cross-Complainant is informed and therefore alleges, that the Cross-Defendants,

19   Michael J. Torres, Salvador Navarro and Maria Navarro have made physical alterations to the

20   Condominium without required building permits and failed to receive Association approval.

21    16.  Cross-Complainant is informed and therefore alleges, that the Cross-Defendants,

22   Salvador Navarro and Maria Navarro, participated or instructed Cross-Defendant, Michael J.

23   Torres in his false written and/or oral publications regarding Cross-Complainant's conduct.

24   //

25   //

26   //

27

Cross-Complaint                                                      Page 3

28

1

## FIRST CAUSE OF ACTION: INVASION OF PRIVACY

2

3    17. Cross-Complainant refers to, re-alleges, and hereby incorporates by reference the

4    allegations contained in paragraphs 1 through 16 of the Cross-Complaint.

5    18. From June 2003 continuing to the present time, Cross-Defendant, Michael J. Torres

6    proceeded without Cross-Complainant's consent proceeded to make oral and written publications

7    concerning Cross-Complainant's conduct to members of the association.

8    19. Cross-Complainant is informed and based on said belief alleges that the oral and

9    written publications were with the consent of Cross-Defendants, Salvador Navarro and Maria

10   Navarro.

11   20. Cross-Defendants, Michael J. Torres, Salvador Navarro and Maria Navarro conduct

12   was deliberate, willful and malicious.

13

14   ## SECOND CAUSE OF ACTION: DEFAMATION

15

16   21. Cross-Complainant refers to, re-alleges, and hereby incorporates by reference the

17   allegations contained in paragraphs 1 through 16 of this Cross-Complaint.

18   22. Cross-Defendant, Michael J. Torres, has published false and unprivileged writings

19   exposing Cross-Complainant to contempt, ridicule, hatred, or disgrace and caused the

20   Cross-Complainant to be avoided.

21   23. Fellow Cross-Defendants, Salvador Navarro and Maria Navarro, acquiesced in

22   the defamation activity by never responding to Cross-Complainant's written cease and desist

23   demand.

24   24. As a result of Cross-Defendants, Michael J. Torres, Salvador Navarro and Maria

25   Navarro, defamation Cross-Complainant has been injured in damages to be proven at trial.

26

27   Cross-Complaint                                              Page 4

28

## THIRD CAUSE OF ACTION: INFLICTION OF EMOTIONAL DISTRESS

25. Cross-Complainant refers to, re-alleges and hereby incorporates by reference the allegations in paragraphs 1 through 16 of this Cross-Complaint.

26. Cross-Defendants, Michael J. Torres, Salvador Navarro and Maria Navarro, breached their duty of care to Cross-Complainant by engaging in unprivileged and outrageous conduct against Cross-Complainant.

27. Cross-Defendants, Michael J. Torres, Salvador Navarro and Maria Navarro, either intended to cause Cross-Complainant's emotional distress or engaging in conduct with disregard of the likelihood of causing Cross-Complainant's emotional distress. Cross-Complainant was present at times when outrageous behavior occurred and Cross-Defendant, Michael J. Torres was either present or knew that Cross-Complainant was present.

## FOURTH CAUSE OF ACTION: ENFORCEMENT OF CC&R'S

28. Cross-Complainant refers to, re-alleges, and hereby incorporates by reference the allegations contained in paragraphs 1 through 16 of this Cross-Complaint.

29. Association's CC&R's require approval prior to making alterations to the physical structure to the Condominium.

30. Cross-Defendants, Michael J. Torres, Salvador Navarro and Maria Navarro, violated the CC&R's by making alterations without obtaining Association approval and obtaining the required permits from the City of San Jose's building department.

31. Cross-Complainant is informed and believes, and alleges upon such information and belief that Cross-Defendants, Michael J. Torres, Salvador Navarro and Maria Navarro, has breached the CC&R's by operating a commercial business from the Condominium.

Cross-Complaint                                                    Page 5

-5-

1    32. Cross-Complainant is informed and believes, and alleges upon such information

2  and belief that Cross-Defendants, Michael J. Torres, Salvador Navarro and Maria Navarro have

3  not responded to Association requests to correct CC&R violations.

4    33. CC&R's provide that the prevailing party shall be entitled to recover reasonable

5  attorney fees as ordered by the court in an enforcement suit on the CC&R's.

6

7    <u>FIFTH CAUSE OF ACTION: GENERAL NEGLIGENCE</u>

8

9    34. Cross-Complainant refers to, re-alleges, and hereby incorporates by reference the

10  allegations contained in paragraphs 1 through 16 of this Cross-Complaint.

11    35. Cross-Defendants, Salvador Navarro and Maria Navarro, by failing to accept

12  their property ownership responsibilities which included but not limited to responding to

13  Cross-Complainant's written complaints regarding Cross-Defendant, Michael J. Torres was

14  a proximate cause to Cross-Complainant's to his invasion of privacy, infliction of emotional

15  distress and defamation.

16    36. Cross-Defendant, Michael J. Torres, was negligent in his oral and written

17  publications regarding Cross-Complainant's conduct which was a proximate cause to the

18  damages suffered by the Cross-Complainant.

19    37. As a result of Cross-Defendants', Michael J. Torres, Salvador Navarro and Maria

20  Navarro, general negligence the Cross-Complaint has been injured in damages to be proven at

21  trial.

22

23    <u>SIXTH CAUSE OF ACTION: FRAUD</u>

24

25    38. Cross-Complainant refers to, re-alleges, and hereby incorporates by reference the

26  allegations contained in paragraphs 1 through 16 of this Cross-Complaint.

27  Cross-Complaint                                              Page 6

28

39. Cross-Defendants, Michael J. Torres, Salvador Navarro and Maria Navarro, had made oral publications stating that Cross-Defendant, Michael J. Torres was the sole owner of the Condominium.

40. On or about July 9, 2003 , Cross-Defendant, Salvador Navarro and Maria Navarro caused to be recorded a grant deed granting a 1% ownership interest in the Condominium to a Mike J. Torres.

41 Cross-Complainant is informed, believes and therefore alleges on such belief that the 1% ownership grant deed was recorded not for the purpose of property conveyance, but for the purpose of Cross-Defendant's, Salvador Navarro and Maria Navarro, avoidance of property ownership responsibilities.

42. Cross-Complainant is informed and believes, and therefore alleges on said belief that the 1% ownership grant deed was a fraudulent conveyance to a Mike J. Torres as failure to properly record in the name of Cross-Defendant, Michael J. Torres was a deliberate attempt to deceive the Cross-Complainant.

44. In justifiable reliance upon Cross-Defendant's, Michael J. Torres, Salvador Navarro and Maria Navarro, Cross-Complainant had believed and acted on said belief that Cross-Defendant, Michael J. Torres was the sole owner of the Condominium.

45. As a result of Cross-Defendant's, Michael J. Torres, Salvador Navarro and Maria Navarro, fraudulent conduct the Cross-Complainant has been injured in damages to be proven at trial.

//
//
//
//
//

Cross-Complaint                                                      Page 7

1    WHEREFORE, Cross-Complainant prays for judgment against Cross-Defendants as

2    follows:

3

4    **Under the First, Second, Third, Fifth and Sixth Causes of Action:**

5

6    A. For damages in excess of this Court's jurisdictional limit incurred by

7    Cross-Complainant as a result of Cross-Defendants', Michael J. Torres, Salvador Navarro and

8    Maria Navarro in an amount to be proven at trial.

9    B. For punitive damages against the Cross-Defendants, Michael J. Torres, Salvador

10   Navarro and Maria Navarro in an amount to be proven at trial.

11   C. For costs of suit incurred.

12

13   **Under the Fourth Cause of Action**

14

15   A. For an injunction requiring the Cross-Defendants, Michael J. Torres, Salvador

16   Navarro and Maria Navarro to restore the Condominium prior to the time that the

17   Cross-Defendants, Michael J. Torres, Salvador Navarro and Maria Navarro made physical

18   improvements and alterations to the Condominium.

19   B. For an injunction prohibiting Cross-Defendants, Michael J. Torres, Salvador Navarro

20   and Maria Navarro from the operation of a commercial business at the Condominium.

21   C. Cross-Complainant to be awarded costs of suit incurred, including reasonable

22   attorney fees.

23   D. For such other relief as the Court deems just and proper.

24

25   Dated: November 4, 2003

26   Stephen M. Hohs
     Cross-Complainant and Defendant, In Pro Per

27   Cross-Complaint                                          Page 8

28

-8-

# EXHIBIT 5

| | POLICY NUMBER | CLAIM NUMBER |
|---|---|---|
| | 105000163A | 3012091119 |
| | COUPON NUMBER | CHECK NUMBER |
| | 03917458Z805 | 1111A103 |

MANSION PARK HOA C/O UNC.
TORRES MICHAEL
BOARD OF MANAGERS COVERAGE
REIMBURSEMENT FOR FEES FOR FILING OF ANSWER ON THE
MATTER OF TORRES V HOHS

TWO HUNDRED SEVENTY ONE DOLLARS AND 20 CENTS************** $***********271.20

BUSINESS INSURANCE DIVISION CLAIM CHECK ACCOUNT

0279994536
0279994536    2 16

PAY DAY | AMO NO | REV LOC
301 | 507 | J26
ALLSTATE INSURANCE COMPANY
P.O. BOX 2806
SANTA FE SPRINGS, CA 90670

STEPHEN M HOHS

61 CHERRY CREST LANE
SAN JOSE                              CA 95136 3618

VOID IF NOT PRESENTED WITHIN 136 INSTANT DAYS OR THE DATE OF ISSUE

⑈000 2799453⑈ ⑈06111 27881⑈ 329 998 5244⑈

# EXHIBIT 6

L.    The RELEASORS hereby agree and direct that the payment of the

aforesaid sum be made by checks or drafts as follows:

"California State Bar Account of John E.F. DiNapoli"

Dated:_____                    _____

                                    MICHAEL TORRES

Dated:_____                    _____

                                    ELIZABETH RUZENDALL

Dated: APRIL 18, 2007               _____

                                    STEPHEN HOHS

6

 COPY

1 | JOHN DINAPOLI (SBN 84365)
STEVEN J. SIBLEY (SBN 152365)
2 | DINAPOLI & SIBLEY
Ten Almaden Boulevard, Suite 1250
3 | San Jose, CA 95113-2271
Telephone:  (408) 999-0900
4 | Facsimile:  (408) 999-0191
e-mail:    jfd@dslaw.net
5 |
Attorneys for Plaintiffs MICHAEL J.
6 | TORRES and ELIZABETH
RUZENDALL
7 |

8 |     SUPERIOR COURT OF CALIFORNIA, COUNTY OF SANTA CLARA

9 |                    UNLIMITED JURISDICTION

10 | MICHAEL J. TORRES and ELIZABETH      Case No. 1-03-CV-006504
RUZENDALL,
11 |                                       **FOURTH AMENDED COMPLAINT FOR
         Plaintiffs,                      DAMAGES AND DECLARATORY AND
12 |                                       INJUNCTIVE RELIEF**
v.
13 |
STEPHEN M. HOHS JOACHIM SIER,
14 | RON SPITZ, CAROL SIER, and DOES 1
through 50, inclusive,
15 |
         Defendants.
16 |

17 |     Plaintiffs allege:

18 |                    **PRELIMINARY ALLEGATIONS**

19 |     1.     Plaintiff MICHAEL J. TORRES ("Torres") is an individual who has resided at 5259

20 | Cherry Gate Lane, San Jose, California ("Condominium") since approximately May 31, 1991,

21 | when his parents, cross-defendants SALVADOR and MARIA NAVARRO purchased it for his

22 | exclusive use and occupancy. The Condominium is located in a residential housing complex

23 | known as Mansion Park.  In  December 2001, cross-defendant MARIA NAVARRO gave

24 | TORRES an unlimited written power of attorney, which authorized him to make any decisions

25 | regarding management or occupancy of the Condominium and to exercise her rights and

26 | privileges as a member of the Mansion Park Homeowners' Association ("Association"). On July

27 | 8, 2003, cross-defendants NAVARRO granted TORRES a 1% ownership interest in the

28 | Condominium, which he retained until March 30, 2004, during which time he was a member of

FOURTH AMENDED COMPLAINT
C:\Cases\Torres\Complaint.4thAC.wpd

1 the Association. The Association holds responsibility for management of the common area
2 associated with plaintiffs' Condominium. From February 2002 until May 1, 2003, plaintiff
3 TORRES was also a member of the Association's Board of Directors.

4     2.     Plaintiff ELIZABETH RUZENDALL ("Ruzendall") is an individual who has resided
5 in the Condominium since 1991.     On March 30, 2004, she acquired sole record title to the
6 Condominium from TORRES and cross-defendants NAVARRO and became a member of the
7 Association. On February 7, 2005, she granted TORRES an unlimited power of attorney to act
8 in her name in relation to the Condominium.

9     3.     Defendant Stephen M. Hohs ("Hohs") is an individual residing at 61 Cherry Crest
10 Lane, San Jose, California, another unit in the Mansion Park complex. HOHS purchased that
11 unit prior to TORRES' occupancy of the complex. At all times mentioned herein, HOHS was
12 a member of the Association, its President, and a member of its Board of Directors.

13     4.     Defendant RON SPITZ is an individual who at all times herein owned and
14 occupied a unit in the Mansion Park complex; was a member of the Association, and at various
15 times has served on its Board of Directors. Plaintiffs are informed and believe and thereupon
16 allege that defendant JOACHIM SIER is an individual who has occupied a unit in the Mansion
17 Park complex for several years, has on occasion claimed to be an owner of that unit and a
18 member of the Association, and has recently served on its Board of Directors. Plaintiffs and
19 are informed and believe and thereupon allege that JOACHIM SIER's unit is owned by his wife,
20 defendant CAROL SIER, who was a member of the Board of Directors from January 2003 to
21 January 2005.

22     5.     Plaintiffs are ignorant of the true names and capacities of defendants sued herein
23 as DOES 1 through 50, inclusive, and therefore sue them by such fictitious names. Plaintiffs
24 will amend this Complaint to allege their true names and capacities when ascertained. Plaintiffs
25 are informed and believe and thereupon allege that each of these defendants is responsible
26 in some manner for the occurrences herein alleged and proximately caused cross-
27 complainants's' damages and other injuries as hereinafter alleged.

28     6.     Plaintiffs are informed and believe and thereupon allege that, at all times

1  mentioned herein, each of the named defendants and DOES 1 through 50, inclusive, except

2  as alleged in this Complaint, was the agent, employee, principal, employer, joint venturer, co-

3  conspirator, partner, representative, or alter ego of each of the remaining defendants and, in

4  doing the things hereinafter alleged, was acting in the course and scope of said agency and

5  employment, with the knowledge, permission, consent, authorization and/or ratification of his,

6  her or its co-defendants, and pursuant to a common scheme and plan to injure plaintiffs.

7       7.       Beginning in about April or May 2003 and continuing to the present time, HOHS

8  committed a series of actions intended to harass, to humiliate, to embarrass and to disturb

9  plaintiff TORRES and RUZENDALL and to deprive them of quiet and peaceful enjoyment of

10  the Condominium.  These acts included, among other things, the unjustified and improper

11  removal of TORRES from the Association's Board of Directors, unwarranted towing of

12  TORRES' vehicles, unjustified citations to TORRES for violation of the Association's Enabling

13  Declaration ("CC&Rs") and other Rules and Regulations (e.g., in letters from HOHS or the

14  management company to cross-defendants NAVARRO and plaintiff RUZENDALL and HOHS'

15  other communications to the Association's Board of Directors), the filing of petitions for

16  restraining orders without probable cause, inciting and assisting other members of the

17  Association to file similar petitions against TORRES, calling the San Jose Police Department

18  to arrest TORRES without probable cause, and the making of oral and written statements

19  designed to defame TORRES and/or to invade his personal privacy. Plaintiffs are informed and

20  believe and thereupon allege that defendants JOACHIM SIER and SPITZ actively supported

21  and participated in many of these actions, e.g., the filing and prosecution of the petitions for

22  restraining orders and that defendant JOACHIM SIER actively supported and participated in

23  calling the San Jose Police Department to arrest TORRES without probable cause on or about

24  Memorial Day in 2003.

25       8.       In doing the acts alleged in the preceding paragraph, HOHS made unauthorized

26  and improper use of the Association's records and property. As an example, HOHS obtained

27  mailing labels from the Association for the purpose of delivering letters to all members of the

28  Association in order to carry out his personal vendetta against TORRES, including, but not

1  limited to, the preparation and publication of the August 13 Letter described in ¶ 11, below.

2      9.    Plaintiffs are informed and believe and thereupon allege that at various times

3  during his ownership of his condominium HOHS authorized the spending of the Association's

4  funds for the purpose of enhancing his own condominium without benefitting the Association

5  as a whole.

6      10.    Plaintiffs are informed and believe and thereupon allege that HOHS and

7  JOACHIM SIER have made physical alterations and improvements to HOHS' and CAROL

8  SIER's condominia, and/or assisted each other in making those alterations, without first having

9  received approval from the Association and without obtaining required building permits from the

10  City of San Jose.

11      11.    Plaintiffs are informed and believe that on May 29, 2003, HOHS caused to be

12  published a letter to TORRES from Community Management Services, the company which then

13  managed the Mansion Park complex ("May 29 Letter"). (Exhibit "A" hereto). The May 29 Letter

14  was distributed to members of the Association's Board of Directors and others (subject to

15  further investigation and discovery in this action) and falsely insinuated that TORRES had been

16  convicted of two felonies during his tenure on the Board of Directors. On August 11 and 13,

17  2003, with defendant SPITZ's prior knowledge and possible participation, defendant HOHS

18  mailed or personally delivered to all members of the Association a letter concerning plaintiff

19  TORRES ("August 13 Letter"). (Exhibit "B" hereto). HOHS did not sign the Letter for fear of

20  making his identity known and exposing himself to liability. The August 13 Letter contained a

21  series of statements about TORRES, which were not generally known to the public and not

22  previously known to other members of the Association. The statements in both letters cast

23  TORRES in an unflattering and false light and invaded his rights of privacy.

24      12.    In a further effort to annoy and embarrass plaintiff TORRES, HOHS wrote and

25  caused others (i.e., Community Management Services) to write numerous letters to plaintiff

26  TORRES's mother, cross-defendant MARIA NAVARRO (then a co-owner of the Condominium,

27  but not a resident), and to plaintiff RUZENDALL concerning TORRES' supposed violations of

28  the Association's CC&Rs and other Rules and Regulations. Those letters contained untrue and

1  defamatory statements concerning TORRES' conduct.  The letters were designed to cause

2  anxiety on the part of TORRES' mother, who is elderly and in poor health, which would in turn

3  impose anxiety, distress and suffering on TORRES.

4        13.    The May 29 Letter and August 13 Letters contained a number of false and

5  misleading statements about TORRES and the August 13 Letter also falsely alleged that all of

6  its statements were true and were included in and supported by the public record. Plaintiffs are

7  informed and believe and thereupon alleges that HOHS made similar statements in oral

8  communications with other members of the Association and its Board of Directors.

9        14.    HOHS' false, misleading oral and written statements included, but were not limited

10  to, the following:

11        (A)    The implication in the letter of May 29, 2003, that TORRES had been

12  convicted of a felony during his brief tenure on the Board of Directors in 2002 and 2003, which

13  would have been necessary to support his removal from the Board under California

14  Corporations Code §7221(a).

15        (B)    The allegation in the August 13 Letter that TORRES was "a **twice-**

16  **convicted Felon** for selling drugs, Methamphetamine" (emphasis in original). In fact, TORRES

17  was not twice convicted of selling methamphetamines and he had not been convicted of any

18  felonies during his residence at Mansion Park (12 years) or his service on its Board of Directors

19  (2 years). Instead, in January 1985, 18 years before the Letter, TORRES had pled guilty to the

20  crime of having sold such drugs. HOHS knew of that conviction before he supported TORRES'

21  efforts to join the Board of the Association in 2001 and 2002 and he knew that TORRES had

22  not been convicted of any felonies since 1985.

23        (C)    The insinuation in the August 13 Letter that TORRES had been twice

24  convicted of a felony during his residence at Mansion Park or his tenure as a Board Member

25  rather than his single conviction 18 years before.

26        (D)    The allegation in the August 13 Letter that TORRES owned Foothill Water,

27  which had a judgment against it for non-payment of bills in the amount of $20,140.17, whereas

28  in fact Foothill Water is owned by his ex-wife, Mary Lou Torres, and was owned by her at the

1  time of the judgment referenced in the Letter.

2        (E)    HOHS's related oral or written statements to members of the Association

3  that an administrative decision by the California Contractors Licensing Board had found that

4  TORRES owned Foothill Water, whereas in fact the decision identified the company owned by

5. TORRES as T&T Plumbing, not Foothill Water.

6        (F)    The allegation in the August 13 Letter that TORRES had tax liens by the

7  California Franchise Tax Board for the specified years, when in fact those tax liabilities arose

8  from and applied not to TORRES, but to his former spouse, Mary Lou Torres and her business,

9  Foothill Water.

10       (G)    The allegation in the August 13 Letter that TORRES had threatened the

11 Association with a lawsuit or hired a lawyer to do so.  TORRES did not threaten such a lawsuit

12 or hire a lawyer for that purpose.  In his later letter to HOHS and others members of the

13 Association on September 15, 2003, TORRES said: "As of this moment there are lawsuits

14 being filed against these people [Defendant HOHS] *and regardless of how much they try to*

15 *push me to start a lawsuit against Mansion Park, this will not happen*" (bates Torres

16 000389, emphasis added).

17       (H)    The allegation in the August 13 Letter that the threatened lawsuit and

18 "other actions" had caused "many delays in the upkeep of the complex."  TORRES had not

19 threatened or contemplated a lawsuit against the Association. Nor had he done anything else

20 to delay the upkeep of the complex.

21       (I)    Other statements in the letters of May 29 and August 13, 2003, and in

22 other oral or written utterances by HOHS, subject to further discovery, investigation and

23 analysis, including, but not limited to, the letters which HOHS and Community Management

24 Services sent to plaintiff RUZENDALL and/or cross-defendant MARIA NAVARRO as alleged

25 in ¶¶ 7 and 12, above.

26       15.    Plaintiffs are informed and believe and thereupon allege that at various times

27 within the two years prior to the filing of plaintiff TORRES' motion to amend the original

28 Complaint in this action, including, but not limited to, dates after March 30, 2004, HOHS,

1  without privilege and without plaintiff RUZENDALL's consent, published, orally and in writing,

2  details about RUZENDALL's financial affairs, including, but not limited to, aspects of her

3  purchase of the Condominium.  Plaintiffs are further informed and believe that some of this

4  information was not derived from any ostensible "public" record, but from confidential and

5  private documents, e.g., documents from the escrow for RUZENDALL's purchase and

6  refinancing of the Condominium.

7    16.    These disclosures about plaintiffs were public disclosures to other members of

8  the Homeowner's Association and its Board of Directors.

9    17.    Defendants' disclosures were offensive and objectionable to plaintiffs and to a

10  reasonable person of ordinary sensibilities in that the disclosures purportedly revealed private

11  details about plaintiffs' personal and moral character, integrity and financial condition.

12    18.    The information disclosed in HOHS' August 13 Letter and his similar or related

13  oral statements about TORRES and the information disclosed in HOHS' oral and written

14  publications about RUZENDALL were not of legitimate public concern and would be offensive

15  and objectionable to a reasonable person.

16    **FIRST CAUSE OF ACTION: INVASION OF PRIVACY--**

17    **PUBLICITY PLACING PERSON IN A FALSE LIGHT IN THE PUBLIC EYE**

18    **(Torres and Ruzendall v. Hohs and Spitz)**

19    19.    Plaintiffs refer to, re-allege, and incorporate by this reference the allegations

20  contained in ¶¶1 through 18 of this Complaint.

21    20.    Defendant HOHS, without privilege and without plaintiffs' consent, invaded plaintiff

22  TORRES' privacy by publishing or causing to be published the May 29 Letter and August 13

23  Letter and invaded plaintiff RUZENDALL's privacy by later publishing information about her

24  financial affairs. Plaintiffs are informed and believe and thereupon allege that defendant SPITZ

25  was aware of the contents of the August 13 Letter prior to its publication and may have actively

26  participated in its preparation and/or publication.

27    21.    The publicity created by defendants HOHS and JOACHIM SIER placed plaintiff

28  TORRES  in a false light in that defendants' publications contained false or misleading

FOURTH AMENDED COMPLAINT
C:\Cases\Torres\Complaint 4thAC.wpd

7

1  statements and inaccuracies which incorrectly portrayed plaintiff TORRES as (a) having been

2  twice convicted of a felony, (b) having been twice convicted of a felony during his tenure on the

3  Association's Board of Directors, (c) having owned and been liable for the debts of Foothill

4  water, (d) having incurred and having been assessed for taxes for several years by the

5  California Franchise Tax Board (specifically, the liabilities set forth in Exhibit "B" hereto, which

6  in fact pertained to his former spouse), (e) having threatened to sue the Association, and (e)

7  having caused many delays in the upkeep of the Mansion Park complex. In addition, the Letter

8  of August 13 falsely stated that each of these alleged facts appeared and had been confirmed

9  in the "Public Record."

10      22.    The publicity created by defendant HOHS placed plaintiff RUZENDALL in a false

11  light in that defendant's publications contained false statements and inaccuracies, including

12  statements that she had knowingly not paid real property taxes on the Condominium and failed

13  to pay her financial obligations on time or at all.

14      23.    The publicity created by defendants was offensive and objectionable to plaintiffs

15  and to a reasonable person of ordinary sensibility in that it caused plaintiffs to suffer mental and

16  physical pain, suffering, embarrassment and humiliation and other damages in excess of the

17  minimum jurisdictional limits of this court.

18      24.    HOHS' and SPITZ's conduct was willful, deliberate, wanton, malicious, and

19  oppressive, and done in reckless disregard of TORRES' and RUZENDALL's rights and interests

20  and with the intent to injure them and deprive them of their rights. As a result, plaintiffs are

21  entitled to an award of punitive and exemplary damages against HOHS and SPITZ in amounts

22  subject to proof.

23      WHEREFORE, TORRES and RUZENDALL pray for judgment against HOHS, SPITZ and

24  DOES 1 through 10, as each of them, as hereinafter stated.

25                    **SECOND CAUSE OF ACTION: DEFAMATION**

26                              **(Torres v. Hohs)**

27      25.    Plaintiff TORRES refers to, re-alleges, and incorporates by this reference the

28  allegations contained in ¶¶ 1 through 24 of this Complaint.

---

26.    HOHS has caused to be published and published false and unprivileged writings exposing plaintiff TORRES to hatred, contempt, ridicule, or disgrace and caused TORRES to be shunned or avoided. These writings included, but were not limited to the May 29 Letter, the August 13 Letter, HOHS' and Community Management Service's letters to plaintiff RUZENDALL and cross-defendant MARIA NAVARRO, as alleged in ¶¶7 and 12, above, and HOHS' similar or related oral statements to members of the Association, its Board of Directors, its management companies, and others, subject to further investigation and discovery in this action. HOHS' false, misleading and defamatory statements included, but were not limited to, those enumerated in ¶ 14, above.

27.    HOHS has made false and unprivileged oral publications charging plaintiff TORRES with a crime or having been indicted, convicted, or punished for committing a crime, including, but not limited to oral statements relating to the criminal charges in the May 29 and August 13 Letters, which implied that TORRES had recently been convicted of felonies which disqualified him as a member of the Board of Directors.

28.    HOHS' written and oral publications exposed plaintiff TORRES to contempt and ridicule and proximately caused him to suffer severe emotional, mental and physical pain, suffering and distress, loss of reputation and standing in the community, and other damages in amounts in excess of the minimum jurisdictional limits of this Court, to be proven at trial.

29.    HOHS made his written and oral publications with malice and an intent to injure plaintiff TORRES.

30.    HOHS' conduct was willful, wanton, malicious, and oppressive, and done in reckless disregard of TORRES' rights and interests and with the intent to injure him and deprive him of his rights. As a result, the TORRES is entitled to an award of punitive and exemplary damages against HOHS in an amount subject to proof.

WHEREFORE, plaintiff TORRES prays for judgment against defendant HOHS and DOES 1 through 10, and each of them, as hereafter stated.

### THIRD CAUSE OF ACTION: INFLICTION OF EMOTIONAL DISTRESS

### (Torres and Ruzendall v. Hohs and Joachim Sier)

31.    Plaintiffs refers to, re-alleges, and incorporates by this reference the allegations

1  contained in ¶¶ 1 through 30 of this Complaint.

2      32.    HOHS and JOACHIM SIER breached their duties of care to plaintiff TORRES and

3  RUZENDALL by engaging in outrageous, unprivileged conduct against them, separately and

4  collectively, including but not limited to, the invasions of privacy and defamatory utterances

5  described in the First and Second Causes of Action in this Complaint. In addition, from time to time

6  within the past two years prior to the filing of TORRES' motion to amend the original Complaint in

7  this action, HOHS has stalked and surveilled RUZENDALL in order to frighten and intimidate her,

8  e.g., by taking pictures of her from his bedroom window and outside his residence, surreptitiously

9  taking photographs of her in her garage or garden, standing and staring at her when she is at the

10 complex's pool and spa, startling her as she exits her garage, calling the City of San Jose with false

11 charges that she is violating City ordinances or regulations, and other acts subject to investigation,

12 analysis, discovery and proof in this action. Defendant JOACHIM SIER has committed similar acts,

13 including taking photographs of RUZENDALL, standing and staring at her when she at the

14 complex's pool and spa, accosting and threatening her with physical harm, and other acts and

15 omissions subject to investigation, analysis, discovery and proof in this action.

16     33.    HOHS and JOACHIM SIER either intended to cause plaintiffs emotional distress or

17 engaged in the conduct described above with reckless disregard of the probability of causing them

18 emotional distress, including, but not limited to, foreseeable tensions and anxieties in their

19 relationship. Plaintiffs, solely or separately, were present at the time that the outrageous conduct

20 occurred to them and HOHS and JOACHIM SIER knew that they were present.

21     34.    As a proximate result of HOHS' and JOACHIM SIER's outrageous and unprivileged

22 conduct, plaintiffs have suffered and will continue to suffer severe emotional and physical, pain,

23 suffering and distress, and other damages subject to investigation, analysis, discovery and proof

24 in this action in excess of the minimum jurisdictional limits of this court.

25     35.    Defendant HOHS' and JOACHIM SIER's conduct was willful, wanton, malicious, and

26 oppressive, and done in reckless disregard of plaintiffs' rights and interests and with the intent to

27 injure them and deprive them of their rights. As a result, the plaintiffs are entitled to an award of

28 punitive and exemplary damages against HOHS and JOACHIM SIER in amounts subject to proof.

FOURTH AMENDED COMPLAINT

1    WHEREFORE, plaintiffs prays for judgment against defendants HOHS, JOACHIM SIER and

2    DOES 1 through 10, and each of them, as hereinafter stated.

3    .FOURTH CAUSE OF ACTION: BREACH OF FIDUCIARY DUTY

4    (Torres and Ruzendall v. Hohs, Joachim Sier, Carol Sier and Spitz)

5    36.    Plaintiffs TORRES and RUZENDALL refer to, re-allege, and incorporate by this

6    reference the allegations of ¶¶ 1 through 35 of this Complaint.

7    37.    HOHS, as President of the Association and a member of its Board of Directors, and

8    JOACHIM SIER, CAROL SIER, and SPITZ as members of the Board, owed a fiduciary duty to

9    plaintiffs and to the Association.

10    38.    HOHS, JOACHIM SIER, CAROL SIER, and SPITZ breached their fiduciary duties

11    to plaintiffs by committing or permitting the acts described above and in the Sixth Cause of Action,

12    below and by failing to exercise their powers as members of the Board or Officers of the

13    Association to restrain, prohibit, or correct the commission of those acts.

14    .    39.    As a proximate result of HOHS', JOACHIM SIER's , CAROL SIER's, and SPITZ's

15    breaches of fiduciary duty, plaintiffs have suffered and will suffer damages in amounts to be proven

16    at trial and in excess of the minimum jurisdictional limits of this court, including, but not limited to,

17    severe emotional and physical distress, pain and suffering, interference with their rights of quiet

18    enjoyment in the Condominium, and economic injuries to their interests in the Condominium.

19    40.    HOHS', JOACHIM SIER's, CAROL SIER's and SPITZ's conduct was willful, wanton,

20    malicious, and oppressive, and done in reckless disregard of plaintiffs' rights and interests and with

21    the intent to injure them and deprive them of their rights. As a result, plaintiffs are entitled to an

22    award of punitive and exemplary damages against these defendants in amounts subject to proof.

23    WHEREFORE, plaintiffs pray for judgment against defendant HOHS, JOACHIM SIER,

24    CAROL SIER, SPITZ and DOES 1 through 10, and each of them, as hereinafter stated.

25    FIFTH CAUSE OF ACTION: MALICIOUS PROSECUTION

26    (Torres v. Hohs, Joachim Sier and Spitz)

27    41.    Plaintiff TORRES refers to, re-alleges, and incorporates by this reference the

28    allegations of ¶¶ 1 through 40 of this Complaint.

42.    On June 24, 2003, HOHS filed a petition against TORRES for a preliminary injunction prohibiting harassment and violence under Code of Civil Procedure §527.6, Santa Clara County Superior Court Case No. 1-03-CV-818096.

43.    Plaintiff TORRES is informed and believes and thereupon alleges that HOHS induced defendants JOACHIM SIER and SPITZ to file similar petitions against TORRES on May 12 and August 19, 2003, Case Nos. 1-03-CV-817040 and 1-03-CV-003559, and assisted them in preparing those petitions and presenting their claims to the Court at trial.

44.    On or about July 11, 2003, Judge Thomas Cain heard HOHS's and JOACHIM SIER's petitions and denied them on the grounds that they had not met the standards necessary for issuance of a preliminary junction. On or about September 5, 2003, Judge James H. Chang came to the same conclusions with reference to SPITZ's petition.

45.    Plaintiff TORRES is informed and believes and thereupon alleges that HOHS, JOACHIM SIER, and SPITZ filed and prosecuted their respective Petitions for Preliminary Injunction Prohibiting Violence, and that HOHS assisted in preparing and prosecuting JOACHIM SIER's and SPITZ's Petitions,   in bad faith, without probable cause, and with malice and ill-will towards TORRES as acts of retribution against his disclosure of their improper conduct as members of the Association and its Board of Directors and his other acts and disclosures, subject to further investigation, analysis, discovery, and proof in this action.

46.    As a proximate result of said defendants' conduct, TORRES has suffered and will suffer damages in amounts to be proven at trial, including, but not limited to, severe emotional and physical distress, pain and suffering.

47.    HOHS', JOACHIM SIER's and SPITZ's actions were willful, wanton, malicious, and oppressive, and done in reckless disregard of TORRES' rights and interests and with the intent to injure him and deprive him of his rights. As a result, the TORRES is entitled to an award of punitive and exemplary damages against said defendants in an amounts subject to proof.

WHEREFORE, plaintiff TORRES prays for judgment against defendants HOHS, JOACHIM SIER, SPITZ and DOES 1 through 10, and each of them, as hereinafter stated.

SIXTH CAUSE OF ACTION: ENFORCEMENT OF CC&Rs

(Ruzendall v. Hohs, Joachim Sier, and Carol Sier)

48.    Plaintiff RUZENDALL refers to, re-alleges, and incorporates by this reference the allegations of ¶¶ 1 through 47 of this Complaint.

49.    The CC&Rs of the Association require members of the Association to seek the approval of its Board of Directors or its Architectural Control Committee, and to comply with all appropriate governmental laws and regulations, prior to making any improvements or alterations to the interior and exterior of their condominium units, as more specifically set forth in §7.9 of the CC&Rs. Similar and related restrictions are set forth from time to time in the Association's rules and regulations booklets, newsletter (i.e., the *Mansion Park Homeowners' Association Messenger*), and other documents. A copy of §7.9 of the CC&Rs is attached hereto as Exhibit "C" and incorporated by this reference.

50.    Plaintiffs are informed and believe and thereupon allege that HOHS breached the CC&Rs of the Association by making alterations to his property, without first obtaining approval from the Association and without first obtaining permits from the appropriate governing bodies and the City of San Jose, and that these alterations remain in place in violation of the CC&Rs of the ASSOCIATION. Plaintiffs are further informed and believe and thereupon allege that JOACHIM SIER assisted HOHS in making these alterations and, in addition, made alterations to CAROL SIER's property, without first obtaining approval from the Association and without first obtaining permits from the appropriate governing bodies and the City of San Jose, that CAROL SIER authorized and ratified JOACHIM SIER's conduct, that all times mentioned herein JOACHIM SIER was CAROL SIER's agent and coadjutor and invaded plaintiffs' rights and privileges under the CC&Rs, that CAROL SIER breached the CC&Rs of the Association by permitting and authorizing JOACHIM SIER's alterations to her condominium without first obtaining approval from the Association and without first obtaining permits from the appropriate governing bodies and the City of San Jose, and that these unauthorized and improper improvements remain in place in violation fo the CC&Rs.

51.    HOHS's, JOACHIM SIER's, and CAROL SIER's wrongful acts and omissions,

1 | included, but were not limited to, the following:

2 |         (A)   In 2002, HOHS permitted JOACHIM SIER to perform extensive alterations to
3 | HOHS' unit; including removing walls, installing a shower, removing a bathtub, installing track
4 | lighting, running new electrical wiring, and other changes which required appropriate approvals from
5 | the Association and permits from the City of San Jose;

6 |         (B)   In 2002, HOHS caused trees to be removed from the common area in front
7 | of his condominium;

8 |         (C)   In 2003, HOHS hired unlicensed and unqualified handymen to perform deck
9 | work through the Mansion Park complex, paid them in cash, and reimbursed himself for these
10 | expenditures from the Association's funds;

11 |         (D)   In 2002, JOACHIM SIER, with CAROL SIER's consent, authorization, and
12 | ratification, and at her direction, made extensive alterations to a hallway bathroom in CAROL
13 | SIER's unit, including removing the subflooring and sidewall beams in order to install a wall-
14 | mounted toilet, mounting the toilet bowl in the wall and reframing that area, removing the bathtub
15 | and installing a home-made shower pan, altering drains and piping within the walls and the subfloor,
16 | and cutting into the horizontal structural beams under the floor;

17 |         (E)   In 2002, with CAROL SIER's consent, authorization, and ratification, and at
18 | her direction, JOACHIM SIER also made extensive alterations to the master-bathroom in CAROL
19 | SIER's unit, including removing the existing bathtub and installing a jacuzzi;

20 |         (F)   In 2002, with CAROL SIER's consent, authorization, and ratification, and at
21 | her direction, JOACHIM SIER installed air-conditioning in the patio of CAROL SIER's
22 | condominium, which included his drilling a large hole in an outside wall of the unit, constructing an
23 | unsightly box around the air-conditioning unit, and permitting it to drain onto a neighbor's patio;

24 |         (G)   Other acts and omissions subject to discovery and proof.

25 |     52.   Plaintiffs are informed and believe and thereupon allege that on June 16, 2003, the
26 | City of San Jose gave HOHS and CAROL SIER written notice of their possible violations of the San
27 | Jose Municipal Code and requested that they voluntarily bring their units into compliance with the
28 | Code and permit the City to inspect their units, as reflected in Exhibits "D" hereto. Plaintiffs are

FOURTH AMENDED COMPLAINT

1  informed and believe that HOHS and CAROL SIER did not make those corrections and did not give

2  the City of San Jose's inspectors access to their respective units to confirm their compliance with

3  the Code.

4       -53.    The CC&Rs of the Association, including §§7.1 and 7.3, provide that no trade or

5  business shall be conducted in the condominia of Mansion Park and that each unit's garage must

6  not be converted any use other than as a parking space.

7       54.    Plaintiffs are informed and believe and thereupon allege that HOHS has breached

8  the CC&Rs by permitting a mechanic, JOACHIM SIER, to use HOHS' garage for commercial use

9  and that JOACHIM SIER has invaded plaintiffs' rights and privileges under the CC&Rs by using

10  HOHS's garage, CAROL SIER's own property, and Mansion Park's common areas for commercial

11  purposes. Plaintiffs and further informed and believe and thereupon allege that CAROL SIER, at

12  all times mentioned herein, knew that JOACHIM SIER was conducting a business out of their

13  condominium and garage and HOHS' garage and that CAROL SIER consented to, authorized, and

14  ratified JOACHIM SIER's conduct. Defendants' past, present and continuing wrongful acts and

15  omissions included, but were not limited to, the following:

16       (A)    From an unknown date in the 1990s until sometime in 2002, JOACHIM SIER

17  conducted business operations in CAROL SIER's garage, doing business as Joe's Used Cars, with

18  CAROL SIER's knowledge, consent, authorization, and ratification. These operations including

19  dismantling, reassembling, painting, performing major engine and body work upon, and tuning up

20  used cars for resale and exhibiting them to potential customers for sale;

21       (B)    From an unknown date in the 1990s to the present, JOACHIM SIER has

22  conducted the same business operations in HOHS' garage and CAROL SIER's garage with HOHS'

23  and CAROL SIER's knowledge and consent. JOACHIM SIER has recently modified these

24  operations in one respect. Instead of exhibiting the vehicles for sale in or near HOHS' or CAROL

25  SIER's garages or at Mansion Park, JOACHIM SIER now exhibits them in the parking lots of nearby

26  grocery stores and brings his purchasers back to CAROL SIER's condominium to complete the

27  paper work for these sales. Plaintiffs are informed and believe and thereupon allege that all times

28  mentioned herein CAROL SIER knew of, authorized, consented to, and ratified JOACHIM SIER's

1 | operation of his business in and about her own unit and HOHS'.

2 |     55.    It would be futile for plaintiffs to seek redress of these violations with the Association,

3 | because HOHS serves as President of the Association, HOHS, JOACHIM SIER, SPITZ and

4 | SIER's wife, CAROL SIER, are or have been members of its Board of Directors, and, as members

5 | of the Board or as officers of the Association, they would not take and have not taken any action

6 | against themselves or each other with respect to these violations.

7 |     56.    §8.1 of the CC&Rs of the Association provides any owner within the Association with

8 | the right to enforce, by any proceeding at law or in equity, all restrictions, conditions, covenants,

9 | reservations, liens and charges in the CC&Rs and the Association's Articles and Bylaws. Plaintiff

10 | RUZENDALL has standing to pursue those same claims pursuant to her 100% ownership interest

11 | in the Condominium since March 30, 2004.

12 |     57.    The CC&Rs provide that an owner within the Association shall be entitled to recover

13 | reasonable attorneys' fees as ordered by the Court in any suit or proceeding against another owner

14 | to enforce the CC&Rs.    Accordingly, plaintiff RUZENDALL seeks plaintiffs' attorneys' fees and

15 | costs in this case from defendants CAROL SIER and HOHS since March 30, 2004.

16 |      WHEREFORE, plaintiff RUZENDALL prays for judgment against defendants HOHS,

17 | CAROL SIER, and JOACHIM SIER, and each of them, as hereinafter stated.

18 | **SEVENTH CAUSE OF ACTION: RECOVERY OF ATTORNEYS' FEES**

19 | **INCURRED IN ENFORCEMENT OF CC&Rs**

20 | **(Torres v. Hohs)**

21 |     58.    Plaintiff TORRES refers to, re-alleges, and incorporates by this reference the

22 | allegations of ¶¶ 1 through 57 of this Complaint.

23 |     59.    From the inception of this case to March 30, 2004, Plaintiff TORRES had standing

24 | to prosecute the prior cause of action for enforcement of the CC&Rs as his mother's agent

25 | pursuant to her written power of attorney and as the owner of a 1% ownership in the Condominium.

26 | §3.5 of the Bylaws of the Association specifically provide that a member may vote at any meeting

27 | in person or by proxy.    In addition, the Bylaws and CC&Rs both state that if more than one person

28 | holds an ownership interest in a condominium, each of them is a member of the Association and

1   they may collectively decide how to exercise the vote and rights attributable to that their unit. (E.g.,

2   Bylaws, §3.6; CC&Rs §§1.5, 3.2, 3.4.

3       60.    The CC&Rs provide that an owner within the Association shall be entitled to recover

4   reasonable attorneys' fees as ordered by the Court in any suit or proceeding against another owner

5   to enforce the CC&Rs.    Accordingly, plaintiff TORRES seeks plaintiffs' attorneys' fees and costs

6   in this case from defendant HOHS from the inception of the case to March 30, 2004.

7       WHEREFORE, plaintiff TORRES prays for judgment against defendant. HOHS, as

8   hereinafter stated, with respect to attorneys fees' and costs incurred in connection with the prior

9   cause of action for enforcement of the CC&Rs.

10              **EIGHTH CAUSE OF ACTION FOR INJUNCTIVE RELIEF**

11                          **(Ruzendall v. Joachim Sier)**

12      61.    Plaintiff RUZENDALL refers to, re-alleges, and incorporates by this reference the

13   allegations of ¶¶ 1 through 57 of this Complaint.

14      62.    Plaintiff RUZENDALL at all times mentioned herein since March 30, 2004, has been

15   the owner and in possession of the Condominium, the successor-in-interest of the prior owners,

16   plaintiff TORRES and cross-defendants NAVARRO, and entitled to exercise all of the rights and.

17   privileges incident to that ownership under the California Civil Code and the Mansion Park CC&Rs.

18      63.    Defendant JOACHIM SIER does not have and has not previously held any ownership

19   interest in or rights of management or control of the condominium owned by his wife, defendant

20   CAROL SIER. Nor does defendant JOACHIM SIER possess any rights or privileges as an owner

21   of a unit in the complex or as a member of the Association, including, but not limited to, any rights

22   or privileges under the CC&Rs with respect to making improvements to units in the Mansion Park

23   complex or conducting a business at the complex  .

24      64.    From the dates described in the Sixth Cause of Action through the date of this Fourth

25   Amended Complaint, defendant JOACHIM SIER, without plaintiff RUZENDALL's and her

26   predecessors-in-interest's consent, has invaded plaintiff RUZENDALL's and her predecessors-in-

27   interest's rights and privileges as owners of the Condominium and members of the Homeowners'

28   Association, under the Civil Code and the CC&R's, by committing the acts described in the Sixth

1  Cause of Action, i.e., making unauthorized physical improvements and alterations to CAROL

2  SIER's and HOHS' condominia and using their respective garages and CAROL SIER's

3  condominium for business and commercial purposes. The physical alterations to HOHS' and

4  CAROL SIER's units are continuing and permanent invasions of plaintiff's rights and privileges and

5  violations of the CC&Rs; and JOACHIM SIER's commercial and business operations at the

6  Mansion Park complex continue unabated, without intervention by the Board of Directors of the

7  Association, as a continuing violation of the CCRs and as a continuing public and private nuisance.

8       65.    Defendant JOACHIM SIER's conduct, unless restrained and enjoined by order of this

9  Court, will cause great and irreparable injury through his ongoing invasion of plaintiff RUZENDALL's

10  property rights and her rights and privileges under the CC&Rs and will deprive her of peace of mind

11  and the quiet enjoyment of her premises.

12       66.    Plaintiff RUZENDALL has no adequate remedy at law for the injuries and invasions

13  of her rights and privileges by defendant JOACHIM SIER because pecuniary damages would be

14  inadequate and extremely difficult or impossible to determine and because, unless enjoined and

15  restrained by this Court, defendant JOACHIM SIER will continue to operate his business at his

16  wife's and defendant HOHS' premises and elsewhere at the Mansion Park complex, will refuse to

17  restore or conform his wife's and HOHS' condominium to the requirements of the City of San Jose's

18  building department and the regulations of the Homeowners' Association, and will continue to make

19  such unauthorized alterations and improvements to those premises, all of which would require

20  plaintiff RUZENDALL to initiate and maintain a number of judicial proceedings to protect and

21  enforce her contractual and property interests in the Condominium, the Mansion Park complex, and

22  the CC&Rs.

23       WHEREFORE, plaintiff RUZENDALL  prays for judgment against defendant JOACHIM

24  SIER as hereinafter stated.

25                          **PRAYER**

26       Plaintiffs pray for judgment against defendants, and each of them, as follows:

27       1.    For general, compensatory, and special damages under the First, Second, Third,

28  Fourth, and Fifth Causes of Action against the defendants named therein, as determined by the

1    trier of fact.

2        2.    For punitive and exemplary damages under the First, Second, Third, Fourth, and

3    Fifth Causes of Action against the defendants named therein, as determined by the trier of fact.

4        3.    For declaratory and injunctive relief under the Sixth Cause of Action against HOHS,

5    JOACHIM SIER, and CAROL SIER and all persons acting in concert with them, including, but not

6    limited to:

7            (A)    A declaration of the parties' rights and duties with reference to improvements

8                and alterations which HOHS and CAROL SIER have made to or permitted

9                to be made to their respective condominia or assisted each other in making,

10               directly or through defendant JOACHIM SIER as their authorized agent;

11           (B)    An injunction requiring HOHS, JOACHIM SIER, and CAROL SIER to restore

12               HOHS' and CAROL SIER's respective properties to their original condition

13               prior to the time that they made or permitted unauthorized physical

14               improvements and alterations to their respective condominia and to refrain

15               from making such changes in the future without appropriate approvals and

16               permits.

17           (C)    A preliminary and permanent injunction prohibiting HOHS and CAROL SIER

18               from renting or otherwise permitting JOACHIM SIER to use their respective

19               condominia and garages for commercial purposes;

20           (D)    A preliminary and permanent injunction prohibiting JOACHIM SIER from

21               renting or using HOHS' and CAROL SIER's garages and condominia and

22               Mansion Park's common areas for commercial purposes.

23       4.    For a preliminary and permanent injunction under the Eighth Cause of Action against

24   defendant JOACHIM SIER and all persons acting with or for him :

25           (A)    Prohibiting him from making further alterations to CAROL SIER's

26               condominium and any other condominia in the Mansion Park complex,

27               including HOHS', without having first having obtained appropriate permits

28               from the City of San Jose and the consent of the Homeowners' Association;

FOURTH AMENDED COMPLAINT
C:\Cases\Torres\Complaint.4thAC.wpd                    19

1        (B)    Requiring him to restore CAROL SIER's property to its original condition prior

2             to the time that JOACHIM SIER and CAROL SIER made or permitted his

3             unauthorized physical improvements and alterations to her condominium and

4             to refrain from making such changes in the future without appropriate

5             approvals and permits;

6        (C)    Prohibiting JOACHIM SIER from renting or using HOHS' and CAROL SIER's

7             condominia, garages and other property and Mansion Park's common areas

8             for commercial purposes.

9     5.    For costs of suit, including reasonable attorneys' fees to the extent recoverable by

10 contract, statute, the common law, or other legal principle, including but not limited to an award of

11 attorneys' fees against defendants HOHS and CAROL SIER pursuant to the Sixth and Seventh

12 Cause of Actions as provided in the CC&Rs..

13     6.    For such other relief as the Court deems just and proper.

14 Dated:       February 14, 2006             DINAPOLI & SIBLEY

15

16

17                          By:

18                          JOHN DINAPOLI, Attorneys

19                          for Plaintiffs MICHAEL J.

                          TORRES and ELIZABETH

20                          RUZENDALL

21

22

23

24

25

26

27

28

FOURTH AMENDED COMPLAINT
C:\Cases\Torres\Complaint 4thAC.wpd         20

# EXHIBIT   A

The letter of May 29, 2003 from Community Management Services, Inc.
bates Torres 000376

 COMMUNITY MANAGEMENT SERVICES, INCORPORATED

May 29, 2003

Mr. Michael Torres
5259 Cherry Gate Lane
San Jose, CA 95136

Re:    Mansion Park Homeowners Association

Dear Mr. Torres:

Pursuant to California Corporations Code §7221(a) the board may declare vacant the office of a director who has been convicted of a felony.   At the Board of Directors meeting on May 28, 2003 the Board of Directors, in compliance with California Corporations Code §7221(a) declared vacant the office held by you on the Board.

In addition while the Board of Directors welcomes and encourages homeowner participation, the Board would like to mention that attendance at the Board of Directors meetings is strictly limited to members of the Association. Some of the material that may be covered is at times sensitive and is best handled through the individual homeowners.

The Board requests that if you have any questions or issues that you refer them first to the owner of your unit, and secondly to the Management Company. The Board is interested in all residents within the community, and will keep you informed by way of the monthly newsletter, which has articles pertinent to Mansion Park. Also from time to time there may be mailings on special issues of which all residents should be informed.

Thank you for your anticipated cooperation in this matter.

Sincerely,

Community Management Services, Inc.

Luis Heredia, Association Manager
Mansion Park Homeowners Association

LH/bs

cc:    Board of Directors
       Files #4 & #16

Torres 000376

1935 Dry Creek Road, Suite 203 ▪ Campbell CA ▪ 95008-3631 ▪ voice (408) 559-1977 ▪ fax (408) 559-1970

# EXHIBIT   B

**The letter addressed Homeowners of Mansion Park being bates Torres 000174**

Homeowners of Mansion Park,

For the past several months one of the residents of Mansion Park has been going door to door complaining about the Board and the quality of the complex maintenance. To some he has stated that he is a homeowner and a licensed contractor. To help put the record straight you should know some facts about Mr. Mike Torres. **This information is from the Public Record** and is available for anyone to view. Here are the highlights:

1. Mr. Torres is a **twice-convicted** Felon for selling drugs, Methamphetamine.

2. Mr. Torres has been a renter until July 9, 2003. On this date his mother gave him a gift of **1% ownership** in the property. Mr. and Mrs. Navarro retain the remaining 99% ownership.

3. Mr. Torres had a plumbing contractors license, which was revoked by the State of California in May 1998.

4. Mr. Torres has a tax lien by the State of California Franchise Tax Board for non-payment of taxes for the years 1989,1991, 1994 for the amount of $9,505.36.

5. Mr. Torres has a tax lien by the State of California Franchise Tax Board for non-payment of taxes for the years 1996,1997, 1998 for the amount of $13,717.30.

6. Mr. Torres business, Foothill Water, has a judgment against it for non-payment of bills for the amount of $20,140.17 (April 8, 1999).

Mr. Torres has stated many times that he is moving and is not interested in serving on the Board of Directors. As of this date (August 2003) he is still a resident and shows no apparent signs of moving. He has managed to threaten the Association with a lawsuit and has retained a lawyer to pursue the matter. This, along with other actions of Mr. Torres, has caused many delays in the upkeep of the complex.

When you have to make a decision as to who you want to trust with your property investment, keep the above facts in mind. He may not be running for the Board, but he wants control. We want to maintain our property values and quality of life in the community.

Thank you for taking the time to read this.

Concerned Homeowners.

# EXHIBIT  C

**CC&R page 23 also being Book K377 page 2017 of the Mansion Park Homeowners Association Enabling Declaration as Hohs CC 0047**

**CC&R page 23 also being Book K377 page 2018 of the Mansion Park Homeowners Association Enabling Declaration as Hohs CC 0048**

K 377 PAGE 2 017

that the term of the lease shall be subject in all respects to the provisions of the Declaration and the Bylaws and to all house rules and regulations adopted by the Board and that any failure of the lessee to comply with the terms of such documents shall be a default under the lease. All owners leasing or renting their condominiums shall promptly notify the secretary of the Association in writing of the names of all tenants and members of tenant's family occupying such condominium and of the address and telephone number where such owner can be reached. All leases shall be required to be in writing.

7.9  Architectural Control: No building, fence, wall, pool, spa, obstruction, outside or exterior wiring, balcony, screen, patio, patio cover, tent, awning, carport, carport cover, trellis, improvement or structure of any kind shall be commenced, installed, erected, painted, repainted or maintained upon the property, nor shall any alteration or improvement of any kind be made thereto until the same has been approved in writing by the Board, or by an Architectural Control Committee appointed by the Board.  Notwithstanding the foregoing, owners may improve or alter any improvements within the interior boundaries of the owner's unit provided such improvement or alteration does not impair the structural integrity of any common area, the utilities or other systems servicing the common area or other condominiums, and does not involve altering any common area (including bearing walls).

Plans and specifications showing the nature, kind, shape, color, size, materials and location of any proposed improvements or alterations, shall be submitted to the Board or to the Architectural Control Committee for approval as to quality of workmanship and design and harmony of external design with existing structures, and as to location in relation to surrounding structures, topography, and finish grade elevation.  No permission or approval shall be required to repaint in accordance with Declarant's original color scheme, or to rebuild in accordance with Declarant's original plans and specifications. No permission or approval shall be required to repaint in accordance with a color scheme previously approved by the Board or the Committee, or to rebuild in accordance with plans and specifications previously approved by the Board or by the Committee. Nothing contained herein shall be construed to limit the right of an owner to paint the interior of his unit any color desired.

No landscaping of patios or yards visible from the street or from the common area shall be undertaken by any owner until plans and specifications showing the nature, kind, shape and location of the materials shall have been submitted to and approved in writing by the Board or by an Architectural Control Committee appointed by the Board.

The Architectural Control Committee shall consist of three (3) members. Declarant may appoint all of the original members of the Committee and all replacements until the first anniversary of the issuance of the original final public report for the first phase of the project. The Declarant reserves to itself the power to appoint a majority of the members to the Committee until ninety percent (90%) of all the condominiums in the project including subsequent phases if any have been sold or until the fifth anniversary of the issuance of the final public report for the first phase of the project, whichever occurs first. After one (1) year from the date of issuance of the original public report for the first phase of the project, the Board shall have the power to appoint one (1) member to the Architectural Control Committee until ninety percent (90%) of all the condominiums in the overall project have been sold or until the fifth anniversary date of the issuance of the final public report for the first phase of the project, whichever first occurs. Thereafter, the Board shall have the power to appoint all of the members of the Architectural Control Committee. Members appointed to the

Hohs CC 0047

Architectural Control Committee by the Board shall be from the membership of the Association. Members appointed to the Architectural Control Committee by the Declarant need not be members of the Association. A majority of the Architectural Control Committee may designate a representative to act for it. In the event of death or resignation of any member of the Committee, the successor shall be appointed by the person, entity or group which appointed such member until Declarant no longer has the right to appoint any member to the Committee, and thereafter the Board shall appoint such a successor. Neither the members of the Committee nor its designated representatives shall be entitled to any compensation for services performed pursuant hereto. In the event the Committee fails to approve or disapprove plans and specifications within thirty (30) days after the same have been submitted to it, approval will not be required and the related covenants shall be deemed to have been fully complied with.

Before commencement of any alteration or improvements approved by the Architectural Control Committee, the owner shall comply with all appropriate governmental laws and regulations. Approval by the Committee does not satisfy the appropriate approvals that may be required by any governmental entity with appropriate jurisdiction.

7.10 **Drapes:** All drapes, curtains, window coverings, shutters, or blinds visible from the street or common areas shall be beige, white, or off-white in color or lined in beige, white, or off-white, or as the case may be, of colors, materials and patterns which are approved by the Board or its authorized committee.

7.11 **Clothes Lines:** There shall be no outside laundering or drying of clothes. No draping of towels, carpets, or laundry over railings shall be allowed.

7.12 **Power Equipment and Car Maintenance:** No power equipment, hobby shops, or car maintenance (other than emergency work) shall be permitted on the property except with prior written approval of the Board. Approval shall not be unreasonably withheld and in deciding whether to grant approval the Board shall consider the effects of noise, air pollution, dirt or grease, fire hazard, interference with radio or television reception, and similar objections.

7.13 **Liability of Owners for Damage to Common Area:** The owner of each condominium shall be liable to the Association for all damage to the common area or improvements to the extent described in section 5.1A.

7.14 **Basketball Standards:** No basketball apparatus or fixed sport apparatus shall be attached to the exterior surface of any portion of the common area.

7.15 **Commonly Metered Utilities:** The Board may establish restrictions regarding the individual use of any utility on a common meter, and may impose reasonable charges for the individual use thereof.

7.16 **Well Drilling:** There shall be no drilling or development of any wells on any part of the project for any purposes. Notwithstanding the foregoing, the Association may authorize the drilling of a water well provided that if the water is to be used for domestic water purposes the Association shall obtain written confirmation from an independent and qualified third party that the water is safe for domestic use and shall comply with all applicable governmental laws and regulations regarding the installation and operation of the well.

# EXHIBIT  D

**The letter of June 16, 2003 from Department of Planning, Building and Code Enforcement addressed to Hohs Stephen M as bates Torres 000104**


**The letter of June 16, 2003 from Department of Planning, Building and Code Enforcement addressed to Carol Sier as bates Torres 000103**



CITY OF
# SAN JOSE
CAPITAL OF SILICON VALLEY

*Department of Planning, Building and Code Enforcement*

STEPHEN M. HAASE, AICP, DIRECTOR

June 16, 2003

HOHS STEPHEN M
61 CHERRY CREST LN
SAN JOSE CA 95136-

FILE NO.    200317786
SUBJECT:    61  CHERRY CREST LN

The Code Enforcement Division of the City of San Jose has received a report indicating a potential violation of the San Jose Municipal Code at the above referenced address. This notice is to inform you of the report and request your voluntary compliance with Code requirements if the report is accurate.

The report indicates that building, plumbing, electrical and mechanical additions and/or alterations have been made to the interior of the dwelling.

If the report is correct, you are in violation of the Municipal Code. You may bring the subject property into compliance with the Municipal Code by performing the following corrective action(s) by the due date(s) listed below.

| Municipal Code | Corrective Action | Due Date |
|---|---|---|
| 24.02.100 | Remove any unauthorized and unpermitted alterations made to the dwelling. Contact Code Enforcement Inspector Jane Azevedo at 277-8424 for an inspection appointment. | 06-30-2003 |

After the due date(s) above, should a site inspection by a Code Enforcement Inspector confirm a violation of Code requirements and no corrective action has been taken, the City will proceed with alternative enforcement measures. This may include, but is not limited to, the following: criminal citation, administrative remedies with penalties up to $2,500 per day/per violation, or an administrative citation with fines.

Your prompt attention to this matter is appreciated. If you have any questions, or if this report is inaccurate, please contact me. My office telephone number is 408-277-8424. Thank you for your anticipated cooperation.

Sincerely,

Jane Azevedo  010E
Code Enforcement Inspector

Torres 000104



CITY OF
**SAN JOSE**
CAPITAL OF SILICON VALLEY

_Department of Planning, Building and Code Enforcement_

STEPHEN M. HAASE, AICP, DIRECTOR

JUNE 16, 2003

CAROL SIER
57 CHERRY CREST LANE
SAN JOSE CA 95136

FILE NO.      200317794
SUBJECT:      57  CHERRY CREST LN

The Code Enforcement Division of the City of San Jose has received a report indicating a potential violation of the San Jose Municipal Code at the above referenced address. This notice is to inform you of the report and request your voluntary compliance with Code requirements if the report is accurate.

The report indicates that **interior plumbing work has been done without permits.**

If the report is correct, you are in violation of the Municipal Code. You may bring the subject property into compliance with the Municipal Code by performing the following corrective action(s) by the due date(s) listed below.

| Municipal Code | Corrective Action | Due Date |
|---|---|---|
| 24.02.100<br>24.01.130 | **Remove an unauthorized additions and/or alterations made to the property. Contact Code Enforcement Inspector Jane Azevedo at 277-8424 for an inspection appointment.** | 06-30-2003 |

After the due date(s) above, should a site inspection by a Code Enforcement Inspector confirm a violation of Code requirements and no corrective action has been taken, the City will proceed with alternative enforcement measures. This may include, but is not limited to, the following: criminal citation, administrative remedies with penalties up to $2,500 per day/per violation, or an administrative citation with fines.

Your prompt attention to this matter is appreciated. If you have any questions, or if this report is inaccurate, please contact me. My office telephone number is 408-277-8424. Thank you for your anticipated cooperation.

Sincerely,

Jane Azevedo  010E
Code Enforcement Inspector

Torres 000103

1

## PROOF OF SERVICE

2          I am a citizen of the United States. My business address is DiNapoli & Sibley, Ten Almaden
Boulevard, Suite 1250, San Jose, California 95113-2271. I am employed in the County of Santa
3   Clara where this service occurred. I am over the age of 18 years, and not a party to the within
cause. I am readily familiar with the normal business practice of DiNapoli & Sibley for collection and
4   processing of correspondence for mailing with the U. S. Postal Service, and that practice is that
correspondence is deposited with the U. S. Postal Service the same day as the day of collection
5   in the ordinary course of business.

6          On the date set forth below, following the ordinary business practice, I served the following
document(s):
7

8   **FOURTH AMENDED COMPLAINT FOR DAMAGES AND DECLARATORY AND
INJUNCTIVE RELIEF**

9   by enclosing a true copy thereof in a sealed envelope and placing it for collection and service that
same day in the ordinary course of business.
10

11   _X__  (BY MAIL)   I caused such envelope with first-class postage thereon fully prepaid to be
placed in the United States mail at San Jose, California, addressed to the parties as follows:
12

| Stephen M. Hohs<br>61 Cherry Crest Lane<br>San Jose, CA 95136-3618 | David J. Stock<br>Rankin, Landsness, Lahde, Serverian & Stock<br>96 N. Third Street, Suite 500<br>San Jose, CA 95112 |
| --- | --- |
| Anthony F. Pinelli<br>Williams Pinelli & Cullen, LLP<br>110 North Third Street<br>San Jose, CA 95112 | Eliza Bechtold<br>DLA Piper Rudnick Gray Cary US LLP<br>2000 University Avenue<br>East Palo Alto, CA 94303-2248 |

13

14

15

16

17   ___  (BY PERSONAL SERVICE) I caused such envelope to be delivered by hand this date to the
offices of the addressee(s) as follows:
18

19   ___  (BY OVERNIGHT DELIVERY) I caused such envelope to be delivered to an overnight
delivery carrier with delivery fees provided for, addressed to the parties as follows:
20

21   ___  (BY TELECOPIER) I caused such document(s) to be served by facsimile transmission to the
parties identified below:

22          I declare under penalty of perjury that the foregoing is true and correct.

23   DATED:     February 14, 2006

24

25                                          JOHN DINAPOLI

26

27

28

# EXHIBIT 7

Torres & Ruzendall v. Hohs, et al, and related Cross Action

## SANTA CLARA SUPERIOR COURT CASE NO. 1-03-CV-006504

## SETTLEMENT AGREEMENT AND RELEASE OF ALL CLAIMS

By executing this Settlement Agreement and Release of All Claims

("Agreement") MICHAEL J. TORRES and ELIZABETH RUZENDALL, on the one hand,

and STEPHEN M. HOHS, on the other, intend to compromise, settle, release, and

relinquish all their claims against each other arising from or pertaining to the subject

matter of that certain civil action presently pending in the Superior Court of California,

Santa Clara County, Case No. 1-03-CV-006504, styled *MICHAEL J. TORRES and*

*ELIZABETH RUZENDALL v. STEPHEN M. HOHS, et al* (hereinafter referred to as the

"CASE"). In the CASE, plaintiffs TORRES and RUZENDALL seek (i) damages for their

alleged emotional and physical distress, injury, pain, and suffering and (ii) declaratory

and injunctive relief with reference to alleged breaches of the CC&Rs of the residential

complex in which all of the parties have resided for several years. In his Cross-

Complaint against plaintiff TORRES, defendant HOHS seeks the same and related

relief against plaintiff TORRES, only.

1.    FOR AND IN CONSIDERATION OF the total sum of $150,000 and other

good and sufficient consideration, receipt of which is hereby acknowledged, MICHAEL

TORRES and ELIZABETH RUZENDALL, their heirs, successors, executors,

administrators, assigns and successors in interest (hereinafter referred to as

"RELEASORS"), forever release and discharge STEPHEN HOHS, and his

administrators, agents, servants, employees, insurers and assigns, whether they are

1

persons, associations, partnerships, firms, corporations, subsidiaries or alter egos

(hereinafter referred to as "RELEASEES"), from any and all claims, demands, liens,

liability, actions or causes of action of every kind, known or unknown and/or suspected

or unsuspected as of the effective date of this Agreement, arising from or related to the

RELEASORS' residence and habitation at the Mansion Park condominium complex

and any alleged actions and/or conduct of RELEASEES  arising from or related to the

incidents alleged in this lawsuit, any incidents, events or claims arising or occurring prior

to the execution of this agreement, and any republication of any defamation alleged that

has occurred or may occur in the future.

    2.    RELEASORS also agree as follows:

        A.    MICHAEL TORRES will permanently vacate the residence at 5259

             Cherry Gate Lane, San Jose, CA no later than seven (7) days after

             receipt of the settlement checks by his attorney.  He agrees he will

             only return to that residence and/or any part of the Mansion Park

             condominium complex property for the sole purpose of preparing

             said residence for sale.  He agrees to give reasonable advance

             notice to his counsel, John DiNapoli of his intent to be at the

             residence who will provide notice to David J. Stock, counsel for

             STEPHEN HOHS.

        B.    ELIZABETH RUZENDALL will list the property at 5259 Cherry Gate

             Lane, San Jose for sale no later than thirty (30) days after receipt

             of the settlement checks by her attorney.  If the property has not

             sold within 150 days of listing, she agrees to permanently vacate

the residence. It is agreed by all parties hereto that she will return periodically to the residence for the sole purpose of facilitating the sale of the residence, and that she may rent the premises if the property does not sell within 150 days to offset any debt service pending sale. She agrees that she will return to the property pending sale only for maintenance or inspection purposes and will not employ or utilize MICHAEL TORRES for these purposes on her behalf.

3.    FOR AND IN CONSIDERATION of a mutual agreement to waive costs and fees, including but not limited to any and all attorneys fees, RELEASEES forever release and discharge RELEASORS, from any and all claims, demands, liens, liability, actions or causes of action of every kind, known or unknown and/or suspected or unsuspected as of the effective date of this Agreement, arising from or related to the RELEASEES' residence and habitation at the Mansion Park condominium complex and any alleged actions and/or conduct of RELEASORS arising from or related to the incidents alleged in this lawsuit, and any incidents, events or claims arising or occurring prior to the execution of this agreement.

4.    FURTHER, in consideration of said draft(s) and said other consideration, and as a further consideration for this release and settlement, the undersigned agree, represent and warrant as follows:

A.    RELEASORS and RELEASEES understand and agree that the liability for said accident, occurrence, condition, casualty, event or series of events, is disputed by the parties herein released and this RELEASE is a

3

compromise and shall not be construed as an admission of liability at any time or for any purpose.

B.  This is a full and final RELEASE applying to all present and future unknown and unanticipated claims, injuries, deaths, or damages arising out of the aforesaid accident, occurrence, condition, casualty, event or series of events. as well as to those now known or disclosed, and the RELEASORS and RELEASEES waive all rights or benefits which they have or may in the future have under terms of section 1542 of the Civil Code of the State of California, or any successor statute thereto, which section reads as follows:

"A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor."

C.  The RELEASORS and RELEASEES abandon all claims and causes of action and will dismiss with prejudice the lawsuit and cross-complaint filed herein.  The RELEASORS and RELEASEES agree that the release shall apply to all unknown, unanticipated, unsuspected and undisclosed claims, demands, liabilities, actions or causes of actions, as well as those which are now known, anticipated, suspected or disclosed.

D.  The RELEASORS and RELEASEES warrant and represent that they are fully entitled to give this complete release and discharge.

E.  This RELEASE is executed without reliance upon any representation by any party concerning the nature or extent of damages, injuries or legal

4

liability therefore, and the RELEASORS and RELEASEES have read the contents thereof, and signed the same as their own free act.

F.     RELEASORS agree to indemnify, defend, and save harmless the RELEASEES and their insurance carriers herein from all subrogation claims, demands or liens from any insurance carrier, attorney, expert witness, medical provider, state or federal agency, or any other person or entity who paid any money to or incurred any expense on behalf of RELEASORS arising out of the subject incident or resultant litigation. This paragraph shall not apply to any and all subrogation claims, demands or liens from any insurance carrier, attorney, expert witness, medical provider, state or federal agency, or any other person or entity who paid any money to or incurred any expense on behalf of RELEASEES arising out of the subject incident or resultant litigation.

G.     Each party hereto agrees to bear its own attorney's fees and costs in relation to the CASE.

H.     The settlement checks will be delivered no later than 10 days after this Agreement is executed by all parties.

I.     This RELEASE contains the entire agreement between the parties hereto. The terms of this RELEASE are contractual and not a mere recital.

J.     It is agreed and acknowledged by all parties that this settlement is deemed a judicially supervised settlement and shall be governed by California Code of Civil Procedure Section 664.6.

K.     It is agreed that this agreement may be executed in counterparts.

5

L.    The RELEASORS hereby agree and direct that the payment of the aforesaid sum be made by checks or drafts as follows:

"California State Bar Account of John E.F. DiNapoli"

Dated: 4/18/07

MICHAEL TORRES

Dated: 4/18/07

ELIZABETH RUZENDAIL

Dated: _____

STEPHEN HOHS

6

L.    The RELEASORS hereby agree and direct that the payment of the aforesaid sum be made by checks or drafts as follows:

"California State Bar Account of John E.F. DiNapoli"

Dated:_____                    _____

                                    MICHAEL TORRES

Dated:_____                    _____

                                    ELIZABETH RUZENDALL

Dated APRIL 16 2007             _____

                                    STEPHEN HOHS

6

SONNENSCHEIN NATH & ROSENTHAL LLP
2121 N. California Blvd., Suite 800
Walnut Creek, California 94596
(925) 949-2600

1    CYNTHIA L. MELLEMA (State Bar No. 122798)
2    JEFFRY BUTLER (State Bar No. 180936)
     MICHELLE BRADLEY (State Bar No. 221323)
3    SONNENSCHEIN NATH & ROSENTHAL LLP
     2121 N. California Blvd., Suite 800
4    Walnut Creek, California 94596
     Telephone: (925) 949-2600
5    Facsimile: (925) 949-2610

6    Attorneys for Defendant
     ALLSTATE INSURANCE COMPANY

7



8                SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                        FOR COUNTY OF SANTA CLARA

10

11   STEPHEN M. HOHS,                        No. 108CV107836

12           Plaintiff,
                                             ANSWER TO COMPLAINT
13       vs.

14   ALLSTATE INSURANCE COMPANY
     and DOES 1 through 100, inclusive,
15                                           BY FAX
             Defendants.
16

17

18       Defendant Allstate Insurance Company ("Allstate") answers the Complaint of plaintiff

19   Stephen M. Hohs (the "Complaint") as follows:

20                                   GENERAL DENIAL

21       Allstate generally denies each and every material allegation in plaintiff's Complaint

22   pursuant to Code of Civil Procedure section 431.30(d). Allstate further denies that plaintiff has

23   sustained any injury, damage, or loss by reason of any conduct, action, error, or omission on the

24   part of Allstate.

25       This answer is filed without prejudice to Allstate's right to file an amended answer or

26   other response, including a Cross-Complaint, after conducting discovery.

27   ///

28
                                           -1-

                                   ANSWER TO COMPLAINT

1

## DEFENSES

(Applicable To All Causes Of Action)

### First Defense

### (Failure to State Claim/Cause of Action)

      1.    The complaint, and each and every purported claim or cause of action therein, fails to state facts sufficient to constitute a claim or cause of action.

### Second Defense

### (Estoppel)

      2.    The complaint, and each and every purported cause of action therein, is barred by the doctrine of estoppel.

### Third Defense

### (Waiver)

      3.    The complaint, and each and every purported cause of action therein, is barred by the doctrine of waiver.

### Fourth Defense

### (Unclean Hands)

      4.    The complaint, and each and every purported cause of action therein, is barred by the doctrine of unclean hands.

### Fifth Defense

### (Laches)

      5.    The complaint, and each and every purported cause of action therein, is barred by the doctrine of laches.

### Sixth Defense

### (Fault of Others)

      6.    Plaintiff's damages, the fact and extent of which Allstate denies, were either wholly or partially caused by and/or contributed to by the fault of others, whether that fault be the proximate result of intentional conduct, negligence, breach of contract, or any other type of fault, of persons, firms, corporations, or entities other than Allstate, for which Allstate is not

-2-

SONNENSCHEIN NATH & ROSENTHAL LLP
2121 N. California Blvd., Suite 800
Walnut Creek, California 94596
(925) 949-2600

1   responsible. Such intentional conduct, negligence, or fault bars recovery against Allstate or

2   comparatively reduces the percentage of fault or negligence, if any, of Allstate.

### Seventh Defense

#### (Consent and/or Authorization of Plaintiff)

5   7.    Plaintiff consented to and/or authorized all conduct and/or omissions of Allstate

6   alleged in the complaint.

### Eighth Defense

#### (Active Fault of Plaintiff)

9   8.    The complaint, and each and every purported cause of action therein, is barred by

10  the active fault of plaintiff.

### Ninth Defense

#### (Comparative Fault)

13  9.    The complaint, and each and every purported cause of action therein, is barred

14  and/or plaintiff's recovery is reduced because plaintiff's alleged damages were the result of

15  plaintiff's comparative fault.

### Tenth Defense

#### (Mitigation of Damages)

18  10.   To the extent plaintiff has failed to mitigate, minimize, or avoid any damages he

19  allegedly suffered, recovery against Allstate, if any, must be reduced by that amount.

### Eleventh Defense

#### (Assumption of Risk)

22  11.   Plaintiff knew, or in the exercise of reasonable care should have known, the risks of

23  the matters alleged in the complaint. Plaintiff knowingly and voluntarily assumed and accepted

24  such risks, and any damages he allegedly suffered were the proximate result of his assumptions

25  and acceptance of such risks.

26  ///

27  ///

28

SONNENSCHEIN NATH & ROSENTHAL LLP
2121 N. California Blvd., Suite 800
Walnut Creek, California 94596
(925) 949-2600

-3-

1

## Twelfth Defense

2

### (Statute of Limitations)

3    12.    The complaint, and each and every purported cause of action therein, is barred by

4    the applicable statutes of limitation, including, without limitation, California Code of Civil

5    Procedure sections 337, 338, 339, 340, and 343.

6

## Thirteenth Defense

7

### (No Causation)

8    13.    Plaintiff is entitled to no relief from Allstate because he sustained no injury,

9    damage, or loss by reason of any conduct, act, error, or omission on the part of Allstate.

10

## Fourteenth Defense

11

### (Intervening Cause)

12    14.    Plaintiff's damages, the fact and extent of which Allstate denies, were proximately

13    caused by intervening, superseding, and/or supervening acts for which Allstate has no liability.

14

## Fifteenth Defense

15

### (Privilege)

16    15.    Allstate's alleged acts, conduct, and/or omissions were lawful, privileged, and/or

17    justified.

18

## Sixteenth Defense

19

### (Good Faith of Allstate)

20    16.    Allstate's conduct was reasonable and in good faith, and hence not tortious.

21

## Seventeenth Defense

22

### (Obligations Limited to Policy Terms)

23    17.    Allstate's obligations, if any, to plaintiff are governed and limited by the terms,

24    definitions, exclusions, conditions, and limitations contained in the subject insurance policy.

25

## Eighteenth Defense

26

### (No Coverage for Claimed Losses)

27    18.    The complaint, and each and every purported cause of action therein, is barred to

28    the extent that it seeks payment, reimbursement, contribution, or indemnification for, or is based

-4-

SONNENSCHEIN NATH & ROSENTHAL LLP
2121 N. California Blvd., Suite 800
Walnut Creek, California 94596
(925) 949-2600

1  on, a loss that is not covered by, or is excluded from, coverage under the terms, exclusions,

2  conditions and limitations of the Policy.

### Nineteenth Defense

### (Loss Already Paid)

19.    The complaint, and each and every purported cause of action therein, is barred in that it seeks payment, reimbursement, contribution, or indemnification for, or is based on, losses that were already paid under the insurance policy.

### Twentieth Defense

### (Plaintiff's Failure to Comply With Policy Terms)

20.    Plaintiff failed to satisfy the terms and/or conditions of the subject insurance policy.

### Twenty-First Defense

### (Allstate's Compliance With Policy Terms)

21.    Allstate fully performed all obligations, both express and implied, owed to plaintiff under the subject insurance policy and applicable law.

### Twenty-Second Defense

### (Ratification of Conduct)

22.    With full knowledge of all facts in any way connected with or relating to the matters alleged in the complaint, plaintiff duly ratified, acquiesced, and/or confirmed in all respects the conduct and/or omissions of Allstate alleged in the complaint.

### Twenty-Third Defense

### (Set-Off)

23.    Plaintiff's damages, the fact and extent of which Allstate denies, are set-off or extinguished under the equitable doctrine of set-off or under California Code of Civil Procedure section 431.70.

### Twenty-Fourth Defense

### (Election of Remedies)

24.    To the extent plaintiff has elected to pursue a certain remedy, he is barred from pursuing or recovering under any other remedy under the doctrine of election of remedies.

SONNENSCHEIN NATH & ROSENTHAL LLP
2121 N. California Blvd., Suite 800
Walnut Creek, California 94596
(925) 949-2600

-5-

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SONNENSCHEIN NATH & ROSENTHAL LLP
2121 N. California Blvd., Suite 800
Walnut Creek, California 94596
(925) 949-2600

## Twenty-Fifth Defense

### (Failure to Join Necessary Parties)

25.   Plaintiff's claims are barred to the extent he failed to join necessary and indispensable parties to this action.

## Twenty-Sixth Defense

### (No Punitive or Exemplary Damages)

26.   The complaint fails to state facts sufficient to entitle plaintiff to punitive or exemplary damages.

## Twenty-Seventh Defense

### (Unconstitutionality of Punitive and Exemplary Damages)

27.   Plaintiff's claim for punitive and exemplary damages is barred because the California punitive damage statute is unconstitutional under the United States and California Constitutions in that, among other things, it is void for vagueness, violates the equal protection clause, due process clause, contract clause, and/or Eighth Amendment proscription against excessive fines, and imposes an undue burden on interstate commerce.

## Twenty-Eighth Defense

### (Indemnification from Responsible Parties)

28.   To the extent Allstate is liable, if at all, for any of plaintiff's claims, the fact and extent of which Allstate denies, Allstate is entitled to indemnification, contribution, and/or equitable apportionment for such claims among all other parties responsible for plaintiff's claims.

## Twenty-Ninth Defense

### (Right to Assert Additional Defenses)

29.   Allstate reserves the right to amend its answer to the complaint to assert any additional defenses and/or applicable terms, provisions, exclusions, limitations, or conditions of the subject insurance policy, as may become apparent during discovery in this action.

/ / /

ANSWER TO COMPLAINT

WHEREFORE, Allstate prays for judgment as follows:

1.      That plaintiff take nothing by way of his complaint and the complaint be dismissed with prejudice;

2.      That judgment be entered in Allstate's favor;

3.      That Allstate be awarded costs and attorneys' fees incurred in this action; and

4.      For such other and further relief as this Court deems just and proper.


Dated: April 25, 2008                    SONNENSCHEIN NATH & ROSENTHAL LLP




By _Michelle A Bradley_

        MICHELLE BRADLEY

Attorneys for Defendant
ALLSTATE INSURANCE COMPANY

SONNENSCHEIN NATH & ROSENTHAL LLP
2121 N. California Blvd., Suite 800
Walnut Creek, California 94596
(925) 949-2600

-7-

ANSWER TO COMPLAINT

1  <u>PROOF OF SERVICE</u>

2  I, Gloria Courtney, hereby declare:

3  I am employed in the City of Walnut Creek, and in the County of Contra Costa, California,

4  in the office of a member of the bar of this court at whose direction the following service was

5  made. I am over the age of eighteen years and not a party to the within action. My business

6  address is Sonnenschein, Nath & Rosenthal, LLP, 2121 North California Blvd., Suite 800,

7  Walnut Creek, California 94596-7342.

8  On April 25, 2008, I caused to be served on the interested parties in this action the

9  following document(s):

10  **Defendant Allstate Insurance Company's ANSWER TO COMPLAINT**

11  by placing a true copy(ies) thereof, on the above date, enclosed in a sealed envelope, following

12  the ordinary business practice of Sonnenschein Nath & Rosenthal LLP, as follows:

13  **Plaintiff In Pro Per:**

14  Stephen M. Hohs
   61 Cherry Crest Lane
15  San Jose, CA 95136-3618

16  Telephone: (408) 225-4353

17

18  ☒  U.S. MAIL: I am personally and readily familiar with the business practice of
   Sonnenschein Nath & Rosenthal LLP for collection and processing of correspondence for
19  mailing with the United States Postal Service, pursuant to which mail placed for collection at
   designated stations in the ordinary course of business is deposited the same day, proper postage
20  prepaid, with the United States Postal Service.

21  ☐  FACSIMILE TRANSMISSION: I caused such document to be sent by facsimile
   transmission at the above-listed fax number for the party.
22

23  I declare under penalty of perjury under the laws of the State of California that the

24  foregoing is true and correct, and that this declaration was executed on April 25, 2008, at

25  Walnut Creek, California.

26

27  _____
   Gloria Courtney

28

SONNENSCHEIN NATH & ROSENTHAL, LLP
2121 N. CALIFORNIA BLVD., SUITE 800
WALNUT CREEK, CA 94596-7342
(925) 949-2600